Hart, J.
 

 The sole question presented is whether plaintiff adduced evidence sufficient to entitle him to have his case submitted to the jury.
 

 The plaintiff complains that the defendants, with knowledge of the purpose for which the ladders were to be used, and with knowledge that a defective ladder furnished for such purpose would be an instrumentality of great hazard and danger to the plaintiff, nevertheless furnished a defective ladder which they, in the exercise of reasonable care, should have known was defective and unsuitable for the purpose for which it was intended; that the negligence of the defendants in this regard was the proximate cause of his injury; and that the defendants in so furnishing such ladder violated a specific safety requirement adopted by the state of Ohio relative to ladders and scaffolds..
 

 It is axiomatic that tort liability is predicated upon the violation of a duty growing out of a legal relationship voluntarily assumed by the tort-feasor with another, or a duty arising by operation of law because of the situation of the parties. The defendants were the bailors and the plaintiff the bailee of the ladder in question. The legal rights and duties arising out of bailment are founded upon the contemplation of benefit accruing to one party or the other, or to both. Here, the defendants, as bailors, furnished the ladder to assist the bailee, the plaintiff, in performing a contract in which the bailors were interested. It was a bailment for mutual benefit. The extent of the duty of a bailor as to defects in the property, which he should recog
 
 *216
 
 nize as likely to injure others, has its basis in the derivation of benefit to himself. Where the bailor has no beneficial interest in the bailment, it may be unreasonable to impose upon him a duty to put the subject matter of the bailment in usable condition unless it is an inherently dangerous instrumentality. Such an obligation would unduly restrict the transfer of property, causing persons to refrain from lending chattels to another for the sole benefit of the latter. However, where both the bailor and the bailee are benefited by , the transaction, the situation is otherwise. It then becomes the bailor’s duty to make the chattel; which is the subject of bailment, safe for its intended purpose, or to inform the bailee of any unsafe condition in the chattel which it was the duty of the bailor, in the exercise of ordinary care, to discover. Restatement of Torts, 1039, Section 388 and 1064, Section 392; 78 University of Pennsylvania Law Review, 413.
 

 Where ■ a bailor is benefited by the- bailment, as in this case, it is held that his duty should be of a higher nature than in the case of a bailment which benefits solely the bailee.
 
 Gagnon
 
 v.
 
 Dana,
 
 69 N. H., 264, 39 A., 982;
 
 In re Application by Phillips, Supt. of Ins.,
 
 250 N. Y., 410, 417, 165 N. E., 829, 832. Such bailor is under obligation to use reasonable effort to anticipate danger by discovering defects which may exist in the chattel bailed. See
 
 Blakemore
 
 v.
 
 Bristol & Exeter Ry. Co.
 
 (1858), 8 E. & B., 1035;
 
 Coughlin
 
 v.
 
 Gillison
 
 (1899), 1 Q. B., 145.
 

 The duty of a supplier of chattels involves a risk similar to that which arises from the duty of an occupier of land to persons coming upon his premises for purposes mutually beneficial. In this case, the defendants employed the plaintiff to go upon and place siding upon a building to fulfill their obligation to the owner of that building. The situation of the parties was not different from what it would have been if the cle
 
 *217
 
 fendants had employed the plaintiff to perform the same service upon their own premises. The plaintiff clearly stood in the relationship to the defendants in the prosecution of this work as an invitee and not as a stranger or licensee in the use of the ladder in question. The plaintiff, as such invitee, was entitled to be protected from unreasonable risks resulting from the condition or disrepair of the ladder or its unfitness or inadequacy for the purpose for which it was supplied. 1 Thompson, Commentaries on Law of Negligence (2 Ed.), 619, Section 679;
 
 Mayhew
 
 v.
 
 Sullivan Mining Co.,
 
 76 Me., 100;
 
 Hozian, an Infant,
 
 v.
 
 Crucible Steel Casting Co.,
 
 132 Ohio St., 453, 9 N. E. (2d), 143, 112 A. L. R., 333;
 
 American Steel & Wire Co.
 
 v.
 
 Sieraski,
 
 119 F. (2d), 709.
 

 It is true that the plaintiff in this case was an independent contractor and not an employee of the defendants. The general rule is that a contractor cannot recover damages from his employer for injuries which the former may sustain in the performance of his contract, and this rule is predicated upon the fact that the contractor has control and is required, as every principal is, to provide for his own safety and protection. If the employer, however, retains the right of control or agrees to furnish the instrumentalities of the work to the contractor to be used by him in the prosecution of the work and the latter is injured by reason of their being defective, a different rule obtains. 27 American Jurisprudence, 508, Section 30.
 

 The rule applicable to the case at bar is stated in 2 Restatement of Torts, 1064, Section 392, as follows:
 

 ‘ ‘ One who supplies to another, directly or through a third person, a chattel to be used for the supplier’s •business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the
 
 *218
 
 manner for which and by persons for whose use the chattel is supplied: (a) If the supplier has failed to exercise reasonable care to .make the chattel safe for the use for which it is supplied, or (b) if the supplier’s failure to give to those whom he should expect to use the chattel the information required by the rule stated in Section 388 [dangerous condition of the chattel or facts which make it likely to be so] is due to his failure to exercise reasonable care to discover its dangerous character or condition.”
 

 Under Comment
 
 b,
 
 the Restatement says:
 

 “* * * Section 392 states the rule under which a peculiar liability is imposed upon one supplying chattels for another’s use because of the fact that the use is one in which the supplier has a business interest. A person so supplying goods is required not only to give warning of dangers which he knows are involved in the use of the article, or which, from facts within his knowledge, he knows are likely to be so involved, but also to subject the article to such an inspection as the danger of using it in a defective condition makes it reasonable to require of him. The additional duty of inspection thrown upon the person so supplying chattels for a use in which he has a business interest, as compared with the absence of any such duty when he has no business interest in the use for which the chattel is supplied, is analogous to the duty of inspection imposed upon one who permits another to come upon his land for his business purpose and the absence of such duty where the permission is granted for any other reason.” See Harper on Torts, 239, Section 105.
 

 The rule is stated in 6 American Jurisprudence, 287, Section 194, as follows:
 

 “* * * while a bailor of personal property for hire is not an insurer against injuries from defects therein, whether discoverable or not, he is held to a high degree of care to make an examination of the chattel
 
 *219
 
 before letting it,, and has frequently been regarded under tbe circumstances shown as impliedly warranting that it is fit for the purpose known to be intended, so that for personal injuries which result on account of a breach of such warranty he may be held liable.” Citing
 
 Eklof
 
 v.
 
 Waterston,
 
 132 Ore., 479, 285 P., 201, 68 A. L. R., 1002;
 
 Conn
 
 v.
 
 Hunsberger,
 
 224 Pa., 154, 73 A., 324, 25 L. R. A. (N. S.), 372,132 Am. St. Rep., 770. See, also,
 
 Hoisting Engine Sales Co.
 
 v.
 
 Hart,
 
 237 N. Y., 30, 142 N. E., 342, 31 A. L. R., 536;
 
 Collette
 
 v.
 
 Page,
 
 44 R. I., 26, 114 A., 136, 18 A. L. R., 74;
 
 Bright, Admr.,
 
 v.
 
 Barnett & Record Co.,
 
 88 Wis., 299, 60 N. W., 418, 26 L. R. A., 524.
 

 In the case of
 
 Heaven
 
 v.
 
 Pender
 
 (1883), 11 L. R. Q. B. Div., 503, the defendant owned a dry dock used for painting and repairing vessels and as incident to such use furnished staging necessary to enable the outside of vessels to be painted. The defendant was held liable to one who, while using such staging,'fell and suffered injuries by reason of a defect in the staging which could have been discovered by reasonable inspection.
 

 In the case of
 
 Mulchey
 
 v.
 
 Methodist Religions Society,
 
 125 Mass., 487, the defendant society had erected a scaffold for use in the performance of a contract to paint the inside of a church, and an employee of the contractor was injured because of a defect in the scaffold. The court held that, since the defendant had, in effect, invited the contractor and his workmen to go upon the scaffold to paint the church, it was liable to any of them who suffered injury from the dangerous condition of the staging which was not apparent to them and which was caused by negligence in its construction.
 

 In the case of
 
 Arizona Binghampton Copper Co.
 
 v.
 
 Dickson, Admr.,
 
 22 Ariz., 163, 195 P., 538, 44 A. L. R., 881, it was held that an employer who agrees to furnish a ladder for the use of one contracting to perform
 
 *220
 
 work for bim is required to exercise reasonable care to have the ladder safe, and is liable for injuries caused by its defective and dangerous condition, if he knew or should have known, or from a careful examination could have known, of the defective condition. For like holdings see
 
 City of Shawnee
 
 v.
 
 Drake,
 
 69 Okla., 209, 171 P., 727, L. R. A. 1918D, 810;
 
 Fountain
 
 v.
 
 Willard-Slater Co.,
 
 172 Cal., 129, 155 P., 630;
 
 Meyers
 
 v.
 
 Syndicate Heat & Power Co., 47
 
 Wash., 48, 91 P., 549;
 
 Bennett
 
 v.
 
 Louisville & Nashville lid. Co.,
 
 102 U. S., 577, 26 L. Ed., 235.
 

 Furthermore, a duty was imposed upon the defendants by Section 12593, General Code, which provides:
 

 “Whoever, employing or directing another to do or perform labor in * * * repairing, altering or painting a house * * * knowingly or negligently furnishes * * * for and in the performance of said labor unsuitable or improper * * * ladders * * * which will not give proper protection to the-life and limb of a person so employed or engaged,” shall be guilty of a misdemean- or and subject to punishment accordingly.
 

 This statute serves to define the duty of the defendants under the circumstances of this case. However, there was no evidence that the defendants knowingly furnished a defective ladder, and to constitute a violation of the statute otherwise, actual negligence must be shown. Incidentally, the plaintiff is not aided in such proof by the statute through the application of the doctrine of negligence
 
 per se
 
 as is usual in the case of the violation of a statute embodying a specific duty in terms of a safety requirement.
 

 In view of the duty of the defendants, as above set out, and the scope of their liability as the result of a breach of such duty as hereinbefore defined, was there any substantial evidence tending to support all the cs
 
 *221
 
 sential elements of plaintiff’s cause of action? The defendants in their answer admitted that “they knew a ladder or ladders were ordinarily used in the application of such siding, knew the purpose of such ladder or ladders in that connection and knew that the use of a defective ladder in the application of siding to a dwelling might result in injury * *
 

 The Court of Appeals in its opinion accurately summarized the facts as shown by the record, as follows:
 

 ‘ ‘ “ * #. by the terms of the contract the contractor [contractee] agreed to provide good, safe equipment. Upon the facts appearing in the most favorable light to the plaintiff, at the conclusion of his testimony it could be said that the defendant had not provided good, safe equipment because, while the ladder was being used in the usual manner and in the ordinary course of the employment, it broke and fell. The evidence will bear the construction that the contractee [contractor] used due care to protect the equipment while it was in his possession and on the job and that when it broke it was in the same condition as when it was sent on to the job by the defendant. It may, also, be properly inferred that the ladder broke because it was defective.”
 

 The Court of Appeals held that this state of facts, even though uncontradicted, did not make a case for the plaintiff because “it may not be said that the defect was such that it should have been discovered by the defendant in the exercise of ordinary care.”
 

 A motion to direct a verdict proceeds on the basis of admitting the truth of whatever competent evidence the opposing party has introduced but challenging its sufficiency to support a verdict. In the recent ease of
 
 Wilkeson, Admr.,
 
 v.
 
 Erskine & Son, Inc.,
 
 145 Ohio St., 218, 61 N. E. (2d), 201, this court had occasion to re-examine this doctrine and we again held that:
 

 
 *222
 

 “
 
 Where, on the trial of a canse, substantial evidence has been introduced from which it
 
 might
 
 reasonably be concluded that defendant was guilty of negligence which was the proximate cause of plaintiff’s injury, the court may not sustain defendant’s motion to direct a verdict.” (Italics ours.)
 

 Judge Turner, in his opinion in that case, appropriately said:
 

 “It is the settled law of this state that a motion for a directed verdict involves an admission of all the facts which the evidence tends to prove. The weight of the evidence is not involved. The inquiry is to be limited to the question of whether there is
 
 any
 
 substantial evidence in this case to support the claims of plaintiff’s petition as to defendant’s negligence and that such negligence was the proximate cause of the alleged injury and resulting damage.” See, also,
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 160 N. E., 629;
 
 Hamden Lodge No. 517, Independent Order of Odd Fellows
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246.
 

 The duty of the defendants and its scope, as defined by law, must be determined in the light of the facts established by the evidence. The undisputed evidence is that the defendants furnished a defective ladder to the plaintiff, knorving that a defective ladder so supplied for the purpose intended would probably bring injury to the plaintiff or his employees. Under such circumstances, it was the duty of the defendants to make proper inspection of the ladder before delivery. Although the defendants had inaugurated a policy of inspection of their equipment in recognition of their duty in that respect, there is no evidence that any specific inspection was made. We think there was sufficient evidence offered to have the case submitted to the jury.
 

 
 *223
 
 In so holding, this court is supported by the decisions of other courts under similar circumstances. In the case of
 
 Branch
 
 v.
 
 Port Royal & Western Carolina Ry. Co.,
 
 35 S. C., 405, 14 S. E., 808, it was held that, where an employee is injured while in the performance of his duty through defective machinery furnished by his employer, he need not allege or prove that such defect was known to the employer. Such want of knowledge is a matter of excuse and defense and is not an element of plaintiff’s cause of action.
 

 In the case of
 
 Kalash
 
 v.
 
 Los Angeles Ladder Co.,
 
 1 Cal. (2d), 229, 34 P. (2d), 481, it was held that, in 'an action for damages for personal injuries sustained by the plaintiff during the course of his employment when a rung on an extension ladder on which he was standing collapsed due to its defective condition and the plaintiff fell to the street, it was a question of fact for the jury whether the ladder, which was of recent manufacture and had been sold to plaintiff’s employer, when used as plaintiff was using it, became, because of defective construction or assembling, an instrument imminently dangerous to human life or limb.
 

 The judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court for further proceedings according to law.
 

 Judgment reversed.
 

 Zimmerman, Bell, Williams and Matthias, JJ., concur.
 

 Turner, J., dissents.