Taft, J.
There is evidence in the record tending to prove that the ladder which broke was a ladder of the defendants.
The written and signed agreement between Kendall and the defendants read in full:
“Scrape and whitewash for $160. for back.”
Construing the evidence most favorably for the plaintiff,' there is evidence which tends to prove that, before or at the time the agreement was signed, nothing was said about who was to furnish ladders, that Kendall did not then know whether defendants had any ladders, that Kendall understood that he was to and he did furnish the lime and the brushes required for the job, that when the work was being done Kendall asked for a plank, ladders, and a tub to mix the lime, that defendants provided a tub and two ladders but not the plank, and that Kendall then provided the plank.
The only intelligible evidence in the record as to how defendants came to furnish the ladders is the testimony of plaintiff as follows:
*74 “We had to have ladders in order to go to work so I had a ladder on this job I was on and we were going to bring that down and then he [representative of defendants] said, no, you don’t need to bother, there is two ladders up there on the balcony. ’ ’
Bearing in mind that defendants were operators of a meat market, we are of the opinion that reasonable minds could not conclude that there was any agreement by defendants to furnish any stepladder for this work, which was admittedly to be done at a fixed price. It follows that, in furnishing one or more stepladders, defendants did so gratuitously.
Plaintiff relies upon Section 12593, General Code, Hilleary v. Bromley, 146 Ohio St., 212, 64 N. E. (2d), 832, and Drexler, an Infant, v. Labay, 155 Ohio St., 244, 98 N. E. (2d), 410.
As to Section 12593, General Code, it is sufficient to state that plaintiff was not employed by defendants and was not directed by defendants to do anything. Plaintiff was in the employ of Kendall and what he did was under the direction of Kendall.
Hilleary v. Bromley, supra, involved a situation where both the one who furnished the ladder and the one to whom it was furnished were “benefited by the transaction” involving the furnishing of the ladder. In that case, it appeared that there was a contract under which one party was obligated to furnish the ladder. See, also, Witherspoon v. Haft, 157 Ohio St., 474, 106 N. E. (2d), 296. Cf. Thrash, a Minor, v. U-Drive-It Co., 158 Ohio St., 465. There was no such contract in the instant case, where the most that can be said for plaintiff is that the ladder was merely furnished by defendants gratuitously. While the defendants in the instant case might well have been “benefited” in a broad sense by the prompt completion of Kendall’s contract, that was a benefit to *75 which they were legally entitled. In other words, they received no legal consideration for furnishing the ladder.
With respect to Drexler v. Labay, supra, plaintiff relies upon paragraph five of the syllabus. However, that paragraph imposes a duty only where there is an “interest or advantage” to the party furnishing the item causing the plaintiff’s injury. Where there is no legal obligation to furnish such item, such interest or advantage must at least be one to which such party was not already legálly entitled. Defendants in the instant case were legally entitled to performance by Kendall of his contract which, as hereinbefore pointed out, did not contemplate the furnishing of any ladders by defendants.
As stated in the opinion in Drexler v. Labay, supra, at page 251:
“It is generally held that the occupier of premises, who invites another to enter upon the premises for some purpose of interest or advantage to such occupier, owes to the person so invited a duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation. 38 American Jurisprudence, 754, Section 96. The reason for imposing this duty, with respect to invitees and not with respect to licensees or trespassers, is that the invitee is on the premises for a purpose of interest or advantage to the occupier. ’ ’
Here, where defendants gratuitously furnished their ladders, there would appear to be no reason for imposing a greater duty on defendants with respect to the condition of those ladders than would be imposed upon the occupier of premises to a licensee thereon. The extent of such duty is set forth in Hannan, Admr., v. Ehrlich, 102 Ohio St., 176, 131 N. E., 504. Admitted *76 ly, while on defendants’ premises, plaintiff was an invitee. It does not, however, follow that the duty of defendants to plaintiff with respect to the condition of the ladder gratuitously loaned by defendants to plaintiff’s employer should be at most any more than to warn of any condition of the ladder known to defendants to be dangerous. Cf. Scheibel v. Lipton, 156 Ohio St., 308, 102 N. E. (2d), 453.
The law is well settled that, ordinarily, one is not liable for injuries resulting from the defective condition of a chattel loaned to another, where the one loaning the chattel did not in fact know of the defective condition, whether he ought to have known of it or not, and such one is under no duty to examine the condition of the chattel before lending it. 6 American Jurisprudence, 308, Section 193; annotations, 12 A. L. R., 774, 793, 61 A. L. R., 1336, 1338, and 131 A. L. R., 845, 855.
As stated by Hart, J., in Hilleary v. Bromley, supra, at page 216:
“Where the bailor has no beneficial interest in the bailment, it may be unreasonable to impose upon him a duty to put the subject matter of the bailment in usable condition unless it is an inherently dangerous instrumentality. Such an obligation would unduly restrict the transfer of property, causing persons to refrain from lending chattels to another for the sole benefit of the latter.”
While this particular ladder turned out to be unsafe, a stepladder is not an inherently dangerous instrumentality. See McGill v. Cleveland & South-Western Traction Co., 79 Ohio St., 203, 86 N. E., 989, 128 Am. St. Rep., 705, 19 L. R. A. (N. S.), 793.
' There is no evidence at all in the record tending to prove that defendants had any knowledge of any defect whatever in any stepladder furnished.
*77 It follows that defendants’ motion for judgment notwithstanding the verdict should have been granted. The judgment of the Court of Appeals is, therefore, reversed and final judgment is rendered for defendants.

Judgment reversed.

Weygandt, C. J., Middleton, Matthias, Hart, Zimmerman and Stewart, JJ., concur.