SCHARF, ADMX., APPELLEE, *v.* THE GARDNER CARTAGE
CO., APPELLANT.

(No. 22639—Decided June 8, 1953.)

*Mr. A. H. Dudnik,* for appellee.
*Messrs. Arter, Hadden, Wykoff & Van Duzer,* for
appellant.

HURD, P. J.   This is an action in tort for wrongful
death, appealed here on questions of law from a judg-
ment of the Court of Common Pleas of Cuyahoga
County, rendered on a verdict in favor of plaintiff in
the sum of $75,000.

The accident occurred on December 9, 1949, on the
premises of The National Tube Company at Lorain,

Ohio. It was due to the sudden collapse of a boom section attached to a 20-ton moto-crane, the property of defendant (herein called Gardner), which, in falling, struck plaintiff's decedent on the head, causing instant death.

At the time of the accident, plaintiff's decedent was an iron worker employed by The Eichleay Corporation, an independent contractor (herein called Eichleay), which was engaged under contract with The National Tube Company in erecting an overhead stripper crane.

Some time prior to December 7, 1949, Eichleay requested Gardner to deliver to the job on the premises of The National Tube Company three 20-ton moto-cranes with 65-foot boom sections attached. Gardner owned only one such crane, which is the equipment involved in this suit, although two cranes and extra boom sections were furnished by Gardner from outside sources. With its own crane Gardner supplied a crane operator and an oiler, both employees of Gardner, at an agreed rental of $120 per day, which amount included the wages of the two employees, the agreement being that the equipment was to be furnished and delivered "fully operated and serviced as required by job superintendent" of Eichleay. There were no other employees of Gardner engaged in the work on the premises of The National Tube Company at any time.

At the time of the accident, Gardner's crane, operated by one McCrone, an employee of Gardner, was engaged in shifting along the ground a girder weighing from 30 to 35 tons, and being 80 to 85 feet long, preparatory to a final lift that would place the girder in its permanent overhead position. The girder had been stored on the ground and had to be swung in a 90-degree arc for raising. Only one end was being lifted at the time of the accident, the weight thereof being

variously estimated from eight tons to one-third or not over one-half of the total weight.

The evidence is clear that defendant Gardner's crane operator was taking directions from a "signal man," who was an employee of Eichleay. In this operation, the operator watched the signal man and followed his signals and directions. In making a lift the crane would boom straight up, lift, and then boom out. It was when the order was given to "boom out" that a boom section attached to the crane collapsed or buckled at a point where it had been previously repaired.

Plaintiff's petition sets forth four separate specifications of negligence. The first three specifications in substance charge the defendant, Gardner, with negligence in supplying to Eichleay a boom section for use on the moto-crane, which boom section was fatally defective in that it was of insufficient strength and lifting capacity, due primarily to the fact that it had been improperly repaired with metal of a different kind than the rest of the structure, to wit, soft angle iron to which had been applied a "spot weld" instead of a complete weld, and that Gardner knew, or in the exercise of ordinary care should have known that the repaired section would not be of sufficient strength and rigidity to withstand the stress and strain required to be put thereon, and, hence, knew or in the exercise of ordinary care should have known that the boom section would be likely to buckle and fall, thus rendering it dangerous to those working in the vicinity of the crane.

The fourth specification charges negligence of Gardner, through its crane operator, under the doctrine of *respondeat superior*, alleging in substance that the crane operator knew or should have known the weight and lifting capacity of Gardner's moto-crane and the boom thereof, and that he attempted to lift material

of weight which he knew, or should have known, would cause the boom to buckle and fall.

Additional facts are stated in the opinion.

Defendant assigns 16 separate grounds of error, the principal grounds being that the court erred in the following respects:

In failing to instruct the jury that at the time of the accident the crane operator was a loaned servant and, as such, was under the control of Eichleay and not under the control of Gardner.

In refusing defendant's request to charge before argument that as a matter of law, and under the evidence, the operator of the crane at the time of the accident was a loaned servant, and that Gardner was not liable or responsible for his negligence, if any.

In giving plaintiff's special request to charge before argument, instructing the jury that at the time of the accident, the crane operator was a servant of and under the control of Gardner.

In giving plaintiff's special request to charge before argument, instructing the jury that it was the duty of Gardner to provide boom sections for use on its boom crane which boom sections were reasonably safe and suitable for work being done by Eichleay, without regard to whether Gardner had knowledge of the nature of the work being done.

In admitting in evidence that portion of plaintiff's exhibit 1, relating to the responsibility of the seller, that provision having application only where the seller is performing the work.

In failing to instruct the jury upon the meaning and application of that portion of plaintiff's exhibit 1 relating to the responsibility of the seller, and in permitting plaintiff's counsel to argue to the jury concerning that portion of plaintiff's exhibit 1.

In overruling defendant's motion for judgment made

at the close of plaintiff's evidence and renewed at the close of all the evidence.

Under the issues and the assigned errors, the first question to be determined is whether Gardner is liable to respond in damages for the negligence, if any, of McCrone, the crane operator, at the time of the accident.

Upon a consideration of the undisputed facts shown in the record, we conclude that McCrone, although a general employee of Gardner, was, at the time of the accident, in the special service of Eichleay, the independent contractor, under whose exclusive direction and control the work was being performed. The facts here show clearly an agreement between the parties, whereby Gardner loaned the equipment "fully serviced and operated." For the purposes of service and operation a crane operator and an oiler were supplied at a specified per diem rental. Gardner had no control or direction over the construction work then being performed. Eichleay, through its job superintendent, and not Gardner, was in complete and exclusive control of the work and the workmen on the job, including Gardner's loaned employees. The true criterion of responsibility under the facts here presented is control and direction of the work and employees.

In view of the factual situation here presented, the principles enunciated in *Halkias* v. *Wilkoff Co.*, 141 Ohio St., 139, 47 N. E. (2d), 199, apply, particularly as set forth in the fourth paragraph of the syllabus, which reads:

"When one party loans his servant to another for a particular employment in the business and under the direction of the latter, the servant, for anything done in that employment, must be regarded as the servant of the party to whom he is loaned, although he remains the general servant of the party who loaned him."

In *McAndrews* v. *E. W. Bliss Co.* (C. C. A. 6, 1951), 186 F. (2d), 499 (certiorari denied, 342 U. S., 821, 96 L. Ed., 621, 72 S. Ct., 41), the United States Circuit Court of Appeals affirmed a judgment for defendant, based upon peremptory instructions in its favor by the District Court of the United States for the Northern District of Ohio, Eastern Division. In that case, as in this case, The Eichleay Corporation was the independent contractor, and, except for the issue of a defective boom, that case is directly in point.

The Court of Appeals in the *McAndrews case* held:

"Where employer assigned crane operator to assist crew of independent contractor in the dismantling [of an] * * * overhead travelling crane at employer's plant, and crane operator, in performing such work, was under sole direction of independent contractor's foreman, employer could not be held liable for crane operator's alleged negligence resulting in injury to member of independent contractor's crew."

For other authorities to the same effect, see: *Denton* v. *Yazoo & Mississippi Valley Rd. Co.*, 284 U. S., 305, 76 L. Ed., 310, 52 S. Ct., 141; *Peters* v. *United Studios, Inc.* (1929), 98 Cal. App., 373, 277 P., 156; *Standard Oil Co.* v. *Anderson* (1908), 212 U. S., 215, 53 L. Ed., 480, 29 S. Ct., 252; *Bartolomeo et al., Admrs.*, v. *Charles Bennett Contracting Co.* (1927), 245 N. Y., 66, 156 N. E., 98; *Western Marine & Salvage Co.* v. *Ball* (1930), 59 App. D. C., 208, 37 F. (2d), 1004, certiorari denied, *Ball* v. *Western Marine & Salvage Co.*, 281 U. S., 749, 74 L. Ed., 1161, 50 S. Ct., 353.

On this phase of the case we pronounce the rule to be that where equipment is supplied under a rental agreement "fully operated and serviced" at a specified per diem rental and the supplier of such equipment, as bailor, furnishes his own employees along with such equipment to operate the same on the premises of another, such supplier, as the general employer, is not

liable for the negligence of such employees, where it is shown that such supplier exercised no direction or control over such loaned servants in the manner or way in which the work for which the equipment was supplied was to be done or accomplished, but that the bailee exercised complete and exclusive direction and control over the operation of such equipment and its operators, and further that such supplier had no interest in the work being done except for the rental of his equipment so supplied. In such a situation such servants must be regarded as the servants of the party to whom they are loaned, even though they remain in the general employ of the supplier.

In view of the facts of this case and the applicable law, we hold that it was error prejudicial to the rights of defendant Gardner to charge the jury that at the time of the accident the crane operator was a servant under the control of Gardner and to refuse Gardner's request to charge under the loaned-servant rule.

We come now to consider error assigned in admitting in evidence that portion of plaintiff's exhibit 1 relating to ''responsibility of seller'' and in permitting plaintiff's counsel to argue this proposition to the jury.

The record shows that the request for rental of the equipment was made by one Samuel E. Langfitt, Jr., who was the superintendent on the job for Eichleay. The request was in the form of a telephone conversation, Langfitt testifying that it took place about four to six weeks prior to December 9, 1949. He testified also that he told the person to whom he spoke that the equipment desired was to lift 30 tons.

Joseph Kelley, an office employee of Gardner, testified that he took the order by telephone from Langfitt, and that an entry was made on his work sheet and that the date the order was to be filled was December 7,

1949. There is no evidence in the record showing that any conditions with respect to responsibility were discussed at that time.

On December 1, following, Eichleay sent from Pittsburgh a requisition to Gardner with instructions to ship to Eichleay, in care of The National Tube Company, Lorain, Ohio, with a notation appearing on its face as follows:

"Services of Lorain 20 ton truck cranes (as required by job superintendent) fully operated and serviced, $120/day."

At the lower part, under the printed words quoted, appear the typewritten words "request by job superintendent." On the back of the requisition under heading, "conditions," certain conditions as to the responsibilities of the "seller" were set forth in great detail.

That part which was introduced in evidence over the objection of Gardner reads as follows:

"By the acceptance of this order, seller assumes all risk of damage to property or injuries to persons, including death resulting therefrom, arising out of the performance of the work, or in connection therewith, or appertaining thereto, sustained by seller, the employees of seller, the employees of buyer, and/or other persons, and hereby agrees to protect, indemnify and save harmless buyer and/or its affiliates against any and all claims, suits and demands therefor, whether chargeable to the negligence of buyer and/or its affiliates, or otherwise.

"Seller will further be responsible for all material and workmanship until finally completed and until finally accepted by buyer, and agrees if the work is to be done on buyer's premises, to keep such premises free and clear of all mechanics' liens.

"Seller shall be responsible for loss of, or damage

to, any and all machinery or equipment upon which work is to be performed by seller, while in possession or control of seller, however such loss or damage shall occur.''

Other parts of the printed matter show that the conditions relate to sale of goods, material and articles. No part of the conditions relate to a loan or rental of equipment such as that involved in the case at bar.

The argument of counsel to the jury, to which particular objection was made, is as follows:

''But here is the killer. The little print he talks about. Oh, yes. Does it make it any less effective that it is in small print than if it were in large print? Oh, he is deathly scared of that little print, and well he should be.

''Please, ladies and gentlemen, read this, and here is your answer to the whole lawsuit. Under 'responsibility' you will catch it on the right hand column under the heading 'responsibility.' It just takes 20 seconds to read.

'' 'By the acceptance of this order, seller'—that is the Gardner Cartage Corporation—'assumes all risk of damage to property or injuries to persons, including death resulting therefrom, arising out of the performance of the work or in connection therewith or appertaining thereto, sustained by seller, the employees of seller, sustained by the employees of buyer' the employees of the Eichleay Company—'I agree' says the Gardner Corporation—'that we will pay the damages for people that are killed on this job.' They said so themselves, and let them get out of it. If I am wrong, interpret it yourselves when you read it.''

It is our conclusion that the quoted paragraphs do not have any bearing upon any issue involved in this case. According to the language used, the most that can be said for it is that it imposes upon the seller an

obligation of indemnity by virtue of which Eichleay would be indemnified and saved harmless "against any and all claims, suits, and demands therefor, whether chargeable to the negligence of buyer, or otherwise," a matter not here in issue. In no sense could the language be interpreted as being for the benefit of the plaintiff. We think that evidence on this extraneous issue was incompetent, immaterial and irrelevant, that its admission constituted error prejudicial to the rights of Gardner, and that the court, upon objection of defendant, should have excluded this evidence and should not have permitted counsel for plaintiff to argue the question to the jury.

The principal issue remaining for consideration is the asserted liability of Gardner for negligence in furnishing a defectively repaired boom section. Questions raised on this issue involve the claim that the court erred in giving plaintiff's request before argument No. 6, which reads:

"You are instructed that it was the duty of the defendant, The Gardner Cartage Company to provide sections for use on its crane boom which were reasonably safe and suitable to use in the performance of the work being done on December 9, 1949."

Involved also are the assignments of error grounded upon the refusal of the court to grant the motion for final judgment at the close of the entire case, and for judgment *non obstante veredicto.*

There is evidence in the record supporting the specifications of negligence to the effect that the section of the boom which collapsed had been previously repaired by the insertion of metal of a different kind than the rest of the section, to wit, soft angle iron in one part of the boom section, which had been welded, ground smooth and painted, and that it was this part of the boom which "buckled or collapsed." There

was evidence tending to show also that the welding was not a "complete weld" but that the boom section was "spot welded," which seriously weakened it. The evidence is crystal clear that it was the buckling of this inherently weak boom section which was the proximate cause of the accident and resulting death.

There is evidence tending to show also that the repaired boom section had been freshly painted and that because of this it looked like a new section. This evidence was produced through the testimony of one Aaron Ernie, who was foreman of the iron workers on the job for Eichleay. He testified that when he examined the boom section after the accident, he found "it had been rebuilt but never completed"; that the "cross staves going across the boom section were just spot welded where they should be fully welded and it was these two staves that let go"; and that "there was an inferior angle iron used on the one corner of the rebuilt boom that twisted easily after the two cross staves let go."

The same witness gave the following significant testimony:

"Q. How did that boom section appear to you as you observed it when it was brought in before the accident? A. The section, when it was brought in was freshly painted section. It looked to me like it was a new section.

"Q. Was that because it was freshly painted? A. That's right."

From the foregoing, it appears that the boom section, which collapsed when used on the moto-crane, was an inherently dangerous instrumentality, as defectively repaired, which condition was not obvious because of its appearance of newness due to the freshly applied coat of paint.

Joseph C. Gardner, president of defendant, Gardner,

under cross-examination testified that he could not say that the defective boom was one of the boom sections furnished by his company; but there is evidence in the record, although disputed, tending to show that the defective boom section was furnished by Gardner, and that after the accident, it was taken into the Gardner yard and sold for scrap. There is evidence also, although disputed, that the 20-foot section was on the boom when it was sent out. We think the actual ownership of the defective boom section is not a controlling factor, since it was admitted by Gardner that a number of boom sections were sent out by Gardner and the crane operator was using the boom section on Gardner's equipment at the time of the collapse.

From the evidence, we conclude that questions of fact were presented for determination by the jury under proper instructions by the court as to whether Gardner was negligent in failing to supply a boom section which was reasonably safe and suitable for use in the performance of the work, and whether such negligence, if any, proximately caused or proximately contributed to cause the death of plaintiff's decedent.

This is true, we think, even though Eichleay may have been guilty of negligence also in failing properly to inspect the equipment. In other words, if Gardner was negligent, Gardner would not be relieved of liability because decedent's employer, Eichleay, was negligent in not discovering the negligence or preventing its natural result.

This proposition, under somewhat different circumstances, is well stated in *Rosebrock, Admx.*, v. *General Electric Co.*, 236 N. Y., 227, 140 N. E., 571, where Judge Crane, in an opinion concurred in by Judges Pound, Cardozo and Hogan, said at page 240:

"If under the circumstances of this case the defendant were negligent it was not relieved of liability be-

cause the purchaser [decedent's employer] was negligent in not discovering the negligence or preventing its natural result.''

The record shows that Gardner, among other activities, was in the business of supplying construction equipment such as moto-cranes and boom sections. Certainly one in such business has the duty of exercising ordinary care to see that the equipment supplied is reasonably safe and suitable for use in the type of work for which it is supplied. This is a duty which is imposed by law, aside from contract.

The following statement of Judge Cardozo in *MacPherson* v. *Buick Motor Co.*, 217 N. Y., 382, 111 N. E., 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, is often quoted:

''We have put aside the notion that the duty to safeguard life and limb, when the consequence of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.''

We find no Ohio case directly in point on the issue of the liability of bailors to third persons for the dangerous and defective condition of instrumentalities loaned or bailed for hire.

In *Hilleary* v. *Bromley,* 146 Ohio St., 212, 64 N. E. (2d), 832, the Supreme Court had occasion to pass upon the duty of a bailor to a bailee. In that case the plaintiff brought an action to recover damages for injuries alleged to have resulted from the negligence of defendant in furnishing him a ladder which was defective and inadequate for the purpose for which it was used. The trial court directed a verdict for the defendants at the close of plaintiff's evidence. The Court of Appeals affirmed and the Supreme Court reversed and remanded, holding that plaintiff had adduced evidence

sufficient to entitle him to have his case submitted to the jury.

The first paragraph of the syllabus of the *Hilleary case* reads:

''The legal rights and duties arising out of bailment are founded upon the contemplation of benefit accruing to one party or the other, or to both; and where both the bailor and bailee are benefited by the transaction, it becomes the bailor's duty to exercise ordinary care to make the chattel which is the subject of bailment safe for its intended purpose, or to inform the bailee of any unsafe condition in the chattel which it was the duty of the bailor, in the exercise of ordinary care, to discover.''

In the later case of *Drexler, an Infant,* v. *Laboy,* 155 Ohio St., 244, 98 N. E. (2d), 410, *Hilleary* v. *Bromley, supra,* is cited with approval in the opinion by Judge Taft, at page 251.

Neither of those cases involves the question of liability to third persons. Therefore, by way of analogy we look to cases covering sales of defective equipment resulting in injuries to third persons.

In *Wood* v. *General Electric Co.* (1953), 159 Ohio St., 273, 112 N. E. (2d), 8, the Supreme Court held that a subpurchaser of an inherently dangerous article could recover from a manufacturer for *negligence* in making and furnishing the article which caused the harm to the subpurchaser. The court held further that such an action must be grounded in tort and cannot be based on implied warranty of fitness for use. See the second paragraph of the syllabus.

To the same effect is *Thrash, a Minor,* v. *U-Drive-It Co.,* 158 Ohio St., 465, 110 N. E. (2d), 419, where the court held that a dealer in used motor vehicles is liable to respond to a third person in damages, for personal injuries because of the failure to exercise reasonable

care to discover defects in such a vehicle sold by him. The fourth paragraph of the syllabus reads:

"Although a dealer in used motor vehicles is not an insurer of the safety of the vehicles he sells, he is generally under a duty to exercise reasonable care in making an examination thereof to discover defects therein which would make them dangerous to users or to those who might come in contact with them, and upon discovery to correct those defects or at least give warning to the purchaser. Such rule is of particular significance where the sale of such a vehicle is accompanied by representations or warranties as to its fitness for use."

In that case, the Supreme Court affirmed the judgment of the Court of Appeals for Summit County. Both the Court of Appeals and the Supreme Court cited with approval the landmark case of *MacPherson* v. *Buick Motor Co., supra*, and at page 470, Judge Zimmerman, in the course of the opinion, said:

"The principle announced in the *MacPherson case* is a reasonable and salutary one and has been widely approved in the cases and by text writers. See 2 Restatement of the Law of Torts, 1073 *et seq.*, Section 394 *et seq.* Compare *Carter* v. *Yardley & Co., Ltd.*, 319 Mass., 92, 64 N. E. (2d), 693, 164 A. L. R., 559; 65 Corpus Juris Secundum, 629, Negligence, Section 100C *et seq.*"

From a consideration of Supreme Court decisions we can logically conclude that in respect to liability to third persons, the rule in relation to sales of dangerously defective equipment is grounded in tort and not contract. *Wood* v. *General Electric Co.* and *Thrash* v. *U-Drive-It Co., supra.*

The principle upon which the rule is founded has its genesis in *MacPherson* v. *Buick Motor Co., supra,* as indicated by the opinion of Judge Zimmerman in the *Thrash case*, hereinbefore quoted in part.

The question naturally arises as to whether the principle of liability to third persons established in respect to sellers, should also apply to lenders or bailors for hire.

In 2 Restatement of the Law of Torts, 1095, Section 408, appears the following:

"One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for bodily harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it."

Based on these conclusions, the reasoning set forth in a comparatively recent case decided by the same court that decided *MacPherson* v. *Buick Motor Co.*, involving liability to third persons of bailors for hire is cogent and persuasive.

In *La Rocca* v. *Farrington* (1950), 301 N. Y., 247, 93 N. E. (2d), 829, the Court of Appeals of New York sustained a verdict in favor of the plaintiff (employee of a shipyard company), who sued two parties defendant for injuries sustained when a link of chain holding the boom of a tractor crane in place broke while the crane was being used by plaintiff and other employees of the shipyard company. The crane belonged to defendant Turner Dock Transfer Company, Inc., which made a business of renting out such equipment and which had rented it to defendant Farrington, who kept it for two days only and then sublet or rented it to plaintiff's employer. The verdict was sustained in favor of plaintiff against both defendants (the independent contractor, employer of plaintiff, not being a party).

The majority of the court, in a *per curiam* opinion, said in part:

"* * * The principle of the *MacPherson case,* *supra,* is no longer limited to manufacturers but has been extended to 'suppliers' as well, a designation which also covers owners and lessors. (See Restatement, Torts, Sections 388, 408; *Connors* v. *Great Northern Elevator Co.,* 90 App. Div., 311, affirmed 180 N. Y., 509; *Richards* v. *Texas Co.,* 245 App. Div., 797, motion for leave to appeal denied 268 N. Y., 728; *MacKibbin* v. *Wilson & English Constr. Co.,* 263 App. Div., 1014, motion for leave to appeal denied 288 N. Y., 738.) Maritime cases such as *Muscelli* v. *Starr Contr. Co.* (296 N. Y., 330) and *Caldarola* v. *Moore-McCormack Lines* (295 N. Y., 463), are distinguishable under the maritime ruling placing full responsibility upon a charter party.

"The fact that the plaintiff's employer, as lessee of the crane, had an equal opportunity to discover the defect and would thus be within the compass of the *MacPherson* [*case*] doctrine does not serve to relieve the owner of liability. (*Wanamaker* v. *Otis Elevator Co.,* 228 N. Y., 192.)"

Thus we conclude that the holding that the principle that it is a bailor's duty to exercise ordinary care to see that the bailed chatttel is safe for its intended use and that such bailor incurs liability for injuries caused by hidden defects extends to suppliers, including owners and lessors thereof, is equally applicable to the facts of the instant case and is not contrary to any authoritative decision in Ohio.

It may be observed also that the holding in the *La Rocca case* that the fact that the employer subleasing the tractor crane from the owner's lessee had equal opportunity with the owner to discover the defect did not relieve the owner from liability for injuries to the employee of the independent contractor as a result of such link breaking is in complete consonance with our

holding here. To the same effect see the quotation from *Rosebrock* v. *General Electric Co., supra.*

In *Wujnovich* v. *Equipment Corporation of America* (D. C.), 54 F. Supp., 465, the plaintiff, an employee of The Crucible Steel Company, was injured when the boom of a crane fell and struck him. Defendant equipment company filed a third party complaint against the steel company alleging the steel company was solely negligent. A verdict was rendered against the equipment company alone, upon which judgment was entered.

On motion for new trial and to set aside the verdict, at page 467, the court said:

"It [the steel company] had the right to rely on the fact that the equipment was in proper condition to operate for the purposes for which it was leased. See *Trusty* v. *Patterson*, 299 Pa., 469, 149 A., 717; *Lambert* v. *Richards-Kelly Co.*, 348 Pa., 407, 35 A. (2d), 76; *Sagonowich* v. *Hachikian*, 348 Pa., 313, 35 A. (2d), 343; *Ebbert* v. *Philadelphia Electric Co.*, 330 Pa., 257, 198 A., 323.

"* * * *

"The third point raises the question of whether or not we erred in charging the jury that the defendant warranted the crane to be suitable for the purpose the Crucible Steel Company was to use it. We are of the opinion that one who supplies machinery to another warrants the safe and proper assembly of the machine he supplies for the purposes for which it was adapted. See *Ebbert* v. *Philadelphia Electric Co.*, 330 Pa., 257, 198 A., 323.''

Before concluding, we wish to note that counsel for Gardner cite the *Thrash case, supra*, in support of their claim for final judgment, arguing that the position of defendant, U-Drive-It Company, which, as the original agency was relieved from liability, is comparable to

their position in this case. We think this argument is untenable, because there is here no intervening agency to break the chain of causation. Only three parties are involved here, namely, Gardner, the bailor, Eichleay, the bailee, and plaintiff's decedent who was fatally injured due to the defective equipment. In our opinion the position of Gardner is more comparable to that of Spot Motor Company, than that of U-Drive-It Company, a proposition covered by the fourth paragraph of the syllabus quoted above.

We think it unnecessary to belabor this point further. Suffice it to say that on the facts of this case, the plaintiff has adduced evidence sufficient to entitle him to have his case submitted to the jury on the issue of negligence in supplying a boom section which was defective due to improper repair.

We hold, therefore, that the trial court did not err in giving to the jury plaintiff's requested charge No. 6, and in overruling the motions for final judgment and for judgment *non obstante veredicto*.

Because of errors prejudicial to the rights of defendant, herein set forth, the judgment of the Common Pleas Court is reversed, and the cause is remanded. We find no other prejudicial errors upon the face of the record.

*Judgment reversed.*

KOVACHY and SKEEL, JJ., concur.