[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] NUNC PRO TUNC
 OPINION
Plaintiffs-appellants, Ricky Wanko, a minor, and his parents Annie Wanko and George Wanko, appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Downie Productions, Inc. ("Downie"), Blue Diamond Marketing Corp., dba Mid-Ohio Golf Car ("Mid-Ohio"), and GJ Pepsi Cola Bottlers, Inc. ("Pepsi"). For the reasons that follow, we affirm.
This case arises out of an injury that occurred on May 26, 1996, while Ricky Wanko and his family were attending the Rhythm and Food Festival in downtown Columbus. Ricky and his family attended the festival to enjoy the event and to visit Ricky's uncle, who was a barbeque vendor at the festival. Ricky, who was nine years old at the time, was injured after he and his sister climbed into an unattended golf cart that was being used by a Pepsi employee to deliver products to various vendors at the festival. The golf cart was parked in a parking lot used primarily by vendors. An unidentified parking lot attendant had given Ricky's mother, Annie Wanko, permission to park her car in the lot that day.
After Ricky and his sister dropped off some prizes they had won at the family car, they began to walk back to the festival. They saw a golf cart in the parking lot parked near a Pepsi truck. Ricky and his sister decided to get in the golf cart to play. While pretending to be driving the golf cart, either Ricky or his sister inadvertently hit the gas pedal on the cart causing it to accelerate and collide with a nearby Pepsi truck. Ricky sustained a severe injury to his arm as a result of the accident.
Appellants filed suit against Downie, who managed and promoted the Rhythm and Food Festival, Mid-Ohio, who leased the golf cart to Downie, and Pepsi, whose employee was using the golf cart prior to the incident. Appellants alleged negligence in failing to keep a proper lookout, failing to exercise a standard degree of care, failing to fully and adequately warn and instruct plaintiff of their negligent conduct, failing to use reasonable and ordinary care in keeping the property safe, failing to make reasonable inspections to discover dangerous conditions, and negligence in other respects. (Complaint, paragraph 16.) Appellants also alleged that Mid-Ohio negligently entrusted the golf cart to Downie.
Appellees all filed motions for summary judgment alleging that Ricky was, at most, a licensee while he was playing on the golf cart and, accordingly, appellees owed no duty to Ricky other than to refrain from willful or wanton conduct. Appellants responded that Ricky was a business invitee at the time of the accident and, accordingly, appellees owed a duty of reasonable care to Ricky Wanko.
By decision dated August 3, 1999, the trial court held, as a matter of law, that Ricky may have been an invitee up until the point he played on the golf cart, but that he was not an invitee at the time of his injury. The trial court reasoned that the scope of the invitation entitled him to travel to and from the family car in the parking lot and that Ricky exceeded the scope of his invitation when he climbed upon the unattended golf cart. At that point, the trial court held that Ricky's status changed from that of an invitee to licensee or trespasser. The trial court also found in favor of Mid-Ohio on the claim of negligent entrustment. The trial court's decision was journalized by entry on August 18, 1999, and this appeal followed.
On appeal, appellants have assigned the following as error:
First Assignment of Error
 The trial court erred in granting summary judgment to Defendants on the basis that nine-year old Plaintiff Ricky Wanko exceeded the scope of his invitation when he stopped to play on a golf cart in a parking lot while traveling to and from the family car.
Second Assignment of Error
 The trial court erred in granting summary judgment to Defendant Mid-Ohio without considering their failure to discover the dangerous condition presented by a golf cart which could be operated without the use of a key.
In his first assignment of error, appellants contend that Ricky Wanko did not, as a matter of law, exceed the scope of his invitee status when he climbed upon the golf cart to play. Appellants argue that Ricky could not lose his status as an invitee unless he physically left the part of the land upon which he had permission to enter, namely the parking lot, and entered another part of the premises upon which he did not have permission to enter.
When the plaintiff's status depends on the resolution of conflicting evidence, it is a question for the finder of fact; however, in a case where the relevant facts are undisputed, the determination of the plaintiff's status is a legal question for the court. Qualchoice, Inc. v. Yost Construction Co., Inc. (Jan. 5, 2000), Lorain App. No. 98CA007224, unreported. Here, we assume for purposes of reviewing the motion for summary judgment, that Downie exercised control over the parking lot and that the golf cart was left in an unattended parking lot in an area that was not roped off or designated as restricted access. We also assume, for purposes of summary judgment, that the golf cart could be operated without a key in the ignition.
It is well settled that, when reviewing a motion for summary judgment, an appellate court reviews the judgment independently and without deference to the previous determination by the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6. The standard of review in this court is de novo. AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157.
It is axiomatic that a court is without authority to grant summary judgment unless it can be demonstrated that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267; Civ.R. 56(C).
Negligence liability "is predicated upon injury caused by the failure to discharge a duty owed to the injured party."McDonald v. Lanius (Oct. 28, 1993), Marion App. No. 9-93-23, unreported, quoting Deeds v. American Security (1987), 39 Ohio App.3d 31,33, 528 N.E.2d 1308. In a negligence action, the existence of a duty is a question of law for the court to decide.Id.
In Ohio, the status of the person who enters the land of another defines the scope of the legal duty that the landowner owes to that entrant. Gladon v. Greater Cleveland RegionalTransit Auth. (1996), 75 Ohio St.3d 312, 315. A person's status with respect to property is not static but may shift with the passage of time, change in location, or change in use. Restatement of the Law 2d, Torts (1965) 181, Section 332, Commentl.
An invitee is one who rightfully comes upon the premises of another by invitation, either express or implied, for some purpose which is beneficial to the owner. Gladon, supra. As the Restatement notes: "An invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out." Id. at 182. See, also,Crampton v. The Kroger Co. (1959), 108 Ohio App. 476, 485 (a business invitation includes an invitation to use such parts of the premises as the visitor is reasonably led to believe are held open to him). One is a licensee if he goes upon the lands of another by permission and acquiescence of the landowner for the licensee's own pleasure or convenience and not by invitation.Hannan v. Ehrlich (1921), 102 Ohio St. 176, 185. A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his or her own purposes or convenience. McKinney v. Hartz Restle Realtors,Inc. (1987), 31 Ohio St.3d 244, 246.
A landowner owes a duty to an invitee to exercise ordinary care for the invitee's safety and protection. Gladon,supra, at 317. The only duty that a landowner owes a licensee or a trespasser is a duty to refrain from willful, wanton, or reckless conduct which is likely to injure him. Id.
However, a person can exceed the scope of the invitation and lose invitee status. The scope of the invitation can be exceeded if the person leaves that portion of the premises which he or she has been invited to enter and goes to a different part of the premises. Gladon, supra, at 315, quoting, Restatement of the Law 2d Torts (1965) 181-182, Section 332, Comment l. The test for considering the scope of the invitation is objective and depends upon how a reasonable person would interpret the purpose for which the land is held open and for which the possessor desires persons to enter. Conniff v. Waterland, Inc. (1997),118 Ohio App.3d 647, 651. Relevant considerations include the possessor's conduct, the nature of the business conducted on the premises, and the arrangement and design of the premises. Id.
In determining the area included within the invitation, the purpose for which the land is held open or the particular business purpose for which the invitation is extended is of great importance. Restatement of the Law, supra. The case of Clary v.McDonald (1963), 120 Ohio App. 8, is instructive on this point. In Clary, the plaintiff and a friend entered a retail tire store to exchange tires and to inquire about the purchase of used tires. While there, the friend stepped into a room adjacent to the repair shop, mounted a small power mower, and started the machine. The friend asked the plaintiff to remove a hammer that was lying under the wheels of the mower. As the plaintiff reached to pick up the hammer his hand came in contact with the cutting blade resulting in the amputation of three fingers. The court of appeals affirmed a directed verdict for the defendants holding that, when the invitee exceeded the limits of his invitation and entered a part of the premises to which the invitation did not extend, the invitee lost his status as an invitee and became a mere licensee.
Similarly, in Herron v. Interstate Brands Corp. (Jan. 25, 1995), Hamilton App. No. C-930782, unreported, Herron, a delivery person, lost his invitee status when he exceeded the scope of his invitation by entering a part of the premises that was unnecessary considering the reason he was invited on the premises. Herron made a delivery to Interstate that required him to have access to the loading dock area while cooking oil was pumped from his truck into storage tanks. While the oil was pumping, Herron left the loading dock area and went into the bakery building to obtain personal refreshment in response to an invitation extended not by Interstate, but by another delivery person. Herron was injured while using an elevator to return to the loading dock area. In directing a verdict for Interstate, the court of appeals noted that a business invitation does not necessarily provide unbounded access to an invitee without regard to the reason for his presence at a particular site. Id.
In this case, there was no evidence to show that visitors to the Rhythm and Food Festival in general, or Ricky Wanko in particular, were given permission, either explicitly or implicitly, to climb on golf carts for personal frolic. An invitation to use the premises to park and to enter and leave the festival does not encompass entering into a golf cart to play. This simply is beyond the scope of the invitation even though, as appellant points out, children may be expected to play with nearly anything. In reaching this conclusion, we have considered appellant's argument that Ricky's conduct was foreseeable given the known propensity of children to play. The question is not, however, whether appellees should have foreseen Ricky's actions, but whether a reasonable person would interpret the purpose for which the parking lot was held open to include playing on an unattended golf cart. Conniff, supra, at 651.
The location and design of the parking lot, as well as the unidentified attendant who gave permission for appellant's mother to park would lead a reasonable person to conclude that the lot was available for patrons of the festival to park their vehicles and to walk to and from their vehicles. However, nothing in the conduct of appellees, the nature of the Rhythm and Food Festival event, or the arrangement and design of the premises, would lead a reasonable person to expect that permission to use the parking lot would extend to climbing upon an unattended golf Ccart to play. Accordingly, we agree with the trial court that appellant exceeded the scope of his invitation as a matter of law. The first assignment of error is not well-taken.
Our resolution of Ricky Wanko's status in the first assignment of error controls our disposition of the second assignment of error as well. In their second assignment of error, appellants argue that Mid-Ohio was negligent in renting a defective golf cart to Downie. Appellants contend that Mid-Ohio breached a duty to make sure the golf carts it rented to Downie would require keys to operate. Appellants rely on Hilleary v.Bromley (1946), 146 Ohio St. 212, for the proposition that, where a bailor and baillee benefit from the transaction, the bailor has a duty to exercise ordinary care to make the chattel which is the subject of bailment safe for its intended purpose, or to inform the bailee of any unsafe condition in the chattel which it was the duty of the bailor to discover in the exercise of ordinary care. Appellants contend that a jury question exists whether Mid-Ohio should have discovered that the golf cart involved in the accident would operate without a key. Appellants further argue that, should a jury determine that Mid-Ohio should have discovered the defect in the golf cart, Mid-Ohio's negligence will have been a proximate cause of the accident and injuries to Ricky Wanko.
A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when the special purpose is accomplished or retained until the bailor reclaims the property. Tomas v.Nationwide Mut. Ins. Co. (1992), 79 Ohio App.3d 624, 628. Bailment involves the transfer of a possessory interest only and not an ownership interest in the property. Id. A bailment may be for the benefit of only the bailor or bailee, or for the mutual benefit of both. Id. In this instance, the bailment was for mutual benefit.
Restatement of the Law 2d, Torts (1965) 301, Section 388, addresses the liability of persons supplying chattels for the use of others. Section 388 states:
§ 388. Chattel Known to be Dangerous for Intended Use
 One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
Comment a to Section 388 explains that:
 The words "those whom the supplier should expect to use the chattel" and the words "a person for whose use it is supplied" include not only the person to whom the chattel is turned over by the supplier, but also all those who are members of a class whom the supplier should expect to use it or occupy it or share in its use with the consent of such person, irrespective of whether the supplier has any particular person in mind. * * *
In the cases thus far decided, the rule stated in this Section has been applied only in favor of those who are injured while the chattel is being used by the person to whom it is supplied, or with his consent. In allprobability the rule stated would not apply in favor ofa thief of the chattel, or one injured while the thiefis using it. Nor would it apply, for example, in favorof a trespasser who entered an automobile and wasinjured by its condition. * * * [Emphasis added.]
By way of further explanation, Comment e explains that, "[e]xcept possibly where there is a privilege to use the chattel, the one who supplies a chattel for another's use is not subject to liability for bodily harm caused by its use by a third person without the consent of him for whose use it is supplied." Restatement of the Law 2d, Torts (1965) 303, Section 388, Commente.
Ohio cases applying the principles articulated above, have found liability where the person injured was an invitee or was using the chattel with permission for its intended use. InWitherspoon v. Haft (1952), 157 Ohio St. 474, the plaintiff, an invitee to a football game, was injured when he fell from the highest row of temporary bleachers. The Supreme Court of Ohio found those who owned and furnished the bleachers owed a duty to third parties invited by the occupier of the premises a duty to exercise ordinary care in furnishing and erecting the bleachers. In Sams v. Englewood Ready-Mix Corp. (1969), 22 Ohio App.2d 168, the plaintiff was injured when his trousers became soaked with ready-mix concrete supplied by the defendants resulting in chemical burns to his skin. The court of appeals cited Restatement of the Law 2d, Torts (1965) 303, Section 388, with approval, noting that "[i]t cannot be said as a matter of law that defendants had no duty to warn [the purchaser] and others whom they should reasonably expect to use their product with his consent of the danger inherent in its use." Id. at 171.
However, our research has not disclosed any cases in Ohio where a duty was owed to a trespasser or one using the property without the consent of the person or entity for whose use it was supplied.
In this case, we assume, for purposes of summary judgment, that the golf cart in question operated without a key as the Pepsi driver and the site manager testified. The Pepsi driver was issued the golf cart on the second day of the festival, and he testified that he was given the cart without a key and instructed by someone from Downie that the cart operated without a key. Thus, construing the evidence in favor of appellants, it is reasonable to infer that Mid-Ohio leased a golf cart to Downie that could operate without a key. The president of Mid-Ohio testified that the only way a golf cart could operate without a key is if it were hot-wired. He also testified that all the golf carts were inspected before they went out, and they were in good working order. However, for purposes of summary judgment, we must assume that Mid-Ohio knew or should have known that the golf cart involved in the accident operated without a key. Therefore, Mid-Ohio had a duty to exercise reasonable care to inform those whom it expected to use the golf cart of this dangerous condition.
It is, however, undisputed that the Downie person who gave the Pepsi driver permission to use the golf cart knew of the fact that it operated without a key, and informed the Pepsi driver of that fact. Thus, any alleged failure to warn of a dangerous condition could not be a proximate cause of the accident unless Mid-Ohio had a duty to warn trespassers or licensees of the dangerous condition.
As discussed above, Ricky Wanko was a trespasser or a licensee using the golf cart without the consent of Downie or Pepsi. Ricky Wanko was never authorized by anyone at the Rhythm and Food Festival to use the golf cart and, at the time of his injury, he took it upon himself to exceed the scope of his invitation and play on the golf cart. Under these circumstances, Ricky Wanko was not a person who Mid-Ohio should have expected would use the golf cart. Accordingly, Mid-Ohio owed no greater duty to Ricky Wanko than did Downie or Pepsi. See Restatement of the Law 2d, Torts (1965) 301, Section 388, Comment a. Based on the foregoing, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _______________________ LAZARUS, J.
PETREE and GREY, JJ., concur.
GREY, J., retired, of the Fourth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.