(No. 29289.— 
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESTER HARRISON, Plaintiff in Error.

*Opinion filed January 23, 1946.*

FRANK A. McDONNELL, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The sole question presented by this writ of error is the propriety of the disposition of an application for probation. Consideration of this issue requires a detailed narration of the proceedings in the trial court.

Three indictments, each charging robbery without a weapon, were returned against the defendant, Lester Harrison, in the criminal court of Cook county. He pleaded guilty to each charge. The trial judge explained that he was waiving his right to trial by jury and that, upon his pleas, he might be sentenced to incarceration in the penitentiary for a term of not less than one nor more than twenty years. Having been admonished of the consequences of his plea, defendant persisted in pleading guilty. The three indictments were consolidated for hearing, and evidence was introduced both in aggravation and in mitigation of the offenses. Florence Horonzy testified that on June 22, 1945, about midnight, near the intersection of Fifty-fourth and Bishop streets in the city of Chicago she saw defendant approaching her; that he knocked her down, struck her, took her purse and ran into an alley. She also

testified that when he struck her he attempted to become unduly familiar with her. The purse stolen was valued at thirty dollars and contained a watch which had a sentimental value. Miss Horonzy notified the police and, shortly thereafter, identified defendant as the person who robbed her. Irene Purcell was nearing her home at 5701 Throop street when she saw defendant cross the street, walking toward her. He hit her with a house brick across the face, breaking her glasses. She added that as defendant struck her she fell against a fence; that he saw her face, seized her by the right arm and around the neck, saying, "Don't holler—don't holler," and directed her to give him the purse she was carrying. Defendant took the purse containing between fifteen and nineteen dollars. Mrs. Purcell was bleeding "terribly from my mouth and the whole side of my face, my ear, and all." As she was removing her ring, in obedience to defendant, he pulled her into an alley. At this juncture, an automobile approached, and Mrs. Purcell broke away and ran to the car. The occupants took her to a nearby house, and summoned a squad car. The police took Irene Purcell to a hospital where stitches were taken behind her ear, and she was treated until the afternoon of the following day. From the testimony of a third witness, Johanna Doerr, it appears that, about 12:30 A.M. on June 23, 1945, when about a block away from her home at 5226 South Bishop street, defendant "shoved me down," grabbed her purse containing her spectacles and about five dollars, then ran to an alley and jumped over a fence. Johanna Doerr called the police and, later, identified defendant at the police station. The three robberies occurred in about an hour's time, between 11:30 P.M. on June 22, and 12:30 A.M. on June 23, in the same neighborhood. The police officer who arrested defendant testified that, when apprehended at one o'clock in the morning of June 23, he was sober and that his shirt was spotted with blood; that, when searched at the station, his billfold contained

eleven dollars; that defendant announced, "I will tell you where I threw the purses;" that he then directed the police officers to a place where Johanna Doerr's purse was recovered, to a second location where he pointed out, in the shrubbery, a purse belonging to Florence Horonzy and, near the intersection of Fifty-seventh and Throop streets, pointed to a purse, lying on the sidewalk, owned by Mrs. Purcell. It thus appears that the three robberies were perpetrated in the same general vicinity and that, when arrested, defendant was in this neighborhood. The officer testified further that defendant did not appear hazy, but was upset about having the three women identify him.

Testifying in mitigation, defendant recounted the history of his life, stating that he was born in Mississippi and subsequently was brought to Chicago where he lived until five years of age when his family went back to Mississippi; that he returned to Chicago in 1938, and attended an elementary school until he obtained employment with a steel manufacturing company; that he worked for the company about five years, until 1944, when he was inducted into the United States army. He was honorably discharged from military service because of sinus trouble. Referring to June 22, 1945, defendant testified that he left his place of employment at six o'clock in the evening; that he repaired to a liquor store and bought some whiskey which he shared with a friend; that they separated and, afterwards, he went to a second store and bought a pint of whiskey; that he drank most of the first bottle and some of the contents of the second, continuing to drink "until I was just about over-intoxicated. I was drunk. I was all mixed up and I do not know what happened." In particular, he denied knowing where he went and disclaimed recollection of being in the neighborhood where the robberies occurred. He testified, further, that he had been previously arrested, in December, 1943, as the result of an altercation with a conductor on a streetcar.

Defendant's counsel produced defendant's discharge record from the army and a letter from the steel company stating that he had been employed in its shipping department since March 21, 1941, and had been continuously employed except for the period from January, 1944, to January, 1945, when he was in the armed services, and that his service record with the corporation itself was very good. His attorney declared that there was no point in attempting to deny the commission of the crimes charged against defendant. He then stated, in effect, that he did not expect probation for defendant but that, because of his good reputation, good employment and a good army record, he desired to save the accused from a penitentiary record, urging, "If your Honor would enter an application for probation, not that I am so presumptuous he is going to get probation, but I think your Honor ought to have a complete history of this boy to bear out what he says, and what I have found out. And I think from that that something should be done for this boy in the way of keeping him out of Joliet or Stateville, and keeping him in Cook county for some time that your Honor would feel to be just punishment for what he did." He concluded additional remarks with the observation, "I think this boy deserves a little consideration." To the court's query as to whether he was asking for probation, the attorney replied, "Just so your Honor will get a complete history of this boy, your own investigators or your Court's investigators can inquire into this boy's past." The trial judge answered that the case was not one for probation, summarized the evidence presented, pointedly observing that, as far as an application for probation was concerned, defendant and his attorney had supplied as complete information as the probation department could furnish, that the probation department could merely verify the statements made in court and add only the information whether and, if so, where, defendant attended church. His attorney asked him this question, which

he answered in the affirmative. Thereupon, the court announced, "That is all the information the Probation Department would get; so we know as much about it today as we ever will." The application for probation was, accordingly, denied, and defendant was sentenced to the penitentiary for a minimum of five and a maximum of six years' imprisonment in each case. A fourth indictment returned against defendant was then *nolle prossed.*

Thereafter, defendant was represented by another attorney who made a motion to vacate the plea of guilty, alleging that, prior to the entry of the plea, the court failed to properly admonish defendant of the consequences of his plea, and, in the alternative, to set aside the order denying the application for probation for the reasons, first, that the court erred in entering an application for probation and denying it *instanter* and, secondly, in failing to have the application investigated by a probation officer.

Defendant describes the denial of his application for probation as summary in character, and insists that an investigation by a probation officer should have been ordered and a hearing had upon his application conformably with the applicable provisions of the Criminal Code. Where a defendant convicted of robbery has not been previously convicted of any criminal offense, the offender, in the discretion of the trial judge, may be admitted to probation. (Ill. Rev. Stat. 1945, chap. 38, par. 785.) The three causes were subject to the statute. Section 4 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1945, chap. 38, par. 732,) after making provision for explaining a plea of guilty to the accused, adds: "In all cases where the court possesses any discretion as to the extent of the punishment, it shall be the duty of the court to examine witnesses as to aggravation and mitigation of the offense." This was done. Section 3 of the Probation Act, (par. 786,) so far as relevant, provides, "Before granting any request for admission to probation, the court shall require the proba-

tion officer to investigate accurately and promptly, the case of the defendant making such request, * * *. Application for release on probation may, in the discretion of the court, be granted if it shall appear to the satisfaction of the court both that there is reasonable ground to expect that the defendant may be reformed and that the interests of society shall be subserved." Section 4 (par. 787,) provides that the court may impose such conditions therein described upon the personal habits and conduct of the defendant as may be deemed necessary for his proper conduct and reform. By section 7, (par. 790,) the court is empowered to discharge a probationer upon the expiration of the probation period, or upon its earlier termination by order of the court.

Defendant relies upon *People* v. *Donovan,* 376 Ill. 602, as being decisive in his favor. There, the defendant was convicted of forgery upon his plea of guilty, the punishment for this crime being an indeterminate sentence. Donovan was not represented by counsel. Thereafter, a motion was made to vacate the judgment and for permission to withdraw the plea of guilty. Affidavits were filed by the State's Attorney of Lee county in support of his answer resisting the motion. Evidence was adduced in aggravation but not in mitigation of the offense. Considering the statutory provisions (pars. 732 and 786) together, we observed: "The discretion the court may exercise upon an application for probation is not an arbitrary discretion to be exercised at the mere will or whim of the court, but is a sound legal discretion dependent for its exercise upon the facts shown. It is obvious that where the facts are not shown and are not inquired into, the denial of probation is an arbitrary and unauthorized exercise of the power." Here, the facts were adequately disclosed. A full inquiry was made and the trial judge had an exceptionally complete history of the defendant's life before him when he imposed sentence.

After evidence in aggravation and mitigation was heard, defendant's attorney said he would like an application for probation entered, not that he thought he would get probation but so the court could have a complete history. The court asked if he was asking for probation and the attorney replied: "Just so your honor will get a complete history of this boy." The court recounted everything proved in the case and commented that everything was shown that a probation officer could find except whether he attended church. Defendant then testified that he did at times attend church. The court then said: "This is all the information the probation department would get so we know as much about it today as we ever will. Is that right?" Probation was then denied and the sentence was for a minimum of five and a maximum of ten years. The attorney said that was too much, but made no exceptions or protest against denying probation. It seems clear that all the facts that could be shown were shown, and the attorney regarded it as a hearing for probation and took no exception to the manner of hearing by the court instead of by the probation officer. No claim is made that any additional facts could be adduced which would result in a different action by the court. We think the record is sufficient to show either a waiver of referring the matter to the probation department or an agreement to have the evidence submitted to the court considered as a hearing for probation. In either event the case of *People v. Donovan,* 376 Ill. .602, would be inapplicable, because the element of arbitrary action is wanting and because the defendant has had the benefit of a hearing.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*