52 So.2d 388

**AIRCRAFT SALES & SERVICE, Inc.,
v. GANTT.
6 Div. 942.**

Supreme Court of Alabama.
May 10, 1951.

London & Yancey, Geo. W. Yancey and Frank E. Lankford, all of Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

Charles F. Gantt recovered judgment in the Circuit Court of Jefferson County, Alabama, against Aircraft Sales & Service, Inc., for personal injuries received in the fall or crash of an airplane operated or piloted by Gantt, and owned by Aircraft Sales & Service, Inc.

The cause was submitted to the jury in the court below on counts "B" and "D". The legal sufficiency of neither count is questioned on this appeal.

In substance, count "B" claimed damages for that, defendant negligently furnished to plaintiff an aircraft with which to make a practice flight which was defective in that the controls would not and could not be operated so as to control the aircraft in flight and that as a result the aircraft crashed or fell. Count "D" is in similar language but specifically alleges that the aircraft was defective in that it had a screwdriver beneath the floor board of the aircraft, which screwdriver was not a part of the aircraft, in a place where it was likely to and did catch or wedge in the controls of the aircraft while in flight and that as a proximate result the aircraft was caused to fall or crash.

Defendant interposed a plea of the general issue in short by consent with leave, etc.

Assignments of error 1, 2 and 3 are predicated upon the refusal of the affirmative charge, with hypothesis, requested in writing by defendant as to each count in the complaint.

Where the affirmative charge is refused the rule is axiomatic that the entire evidence must be viewed in its most favorable aspect for the adverse party and where, from it, a reasonable inference may be drawn adverse to the party requesting it, the charge is properly refused. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224.

It is not denied that prior to, and at the time appellee was injured appellant was conducting a flight school in which students were trained as airplane pilots. Appellee was enrolled as a student in this school under the so called "G. I. Bill," the essential features of which provided that the United States Government, through the Veterans Administration, paid appellant for the instruction and airplanes furnished to appellee. Prior to being injured appellee had received about 12 or 13 hours of instruction with an instructor in the airplane with him. In addition, he had about 15 hours solo time. His instructors had taught him how to make, and handle the airplane in, "S" turns, stalls, spins, landings and take offs and patterns. Prior to his being allowed to fly solo, appellee's instructors taught him how to pull out of spins and stalls, and his ability in these respects had been checked by his instructors before he was allowed to fly an airplane by himself and he had been found competent in that regard. On the afternoon the appellee was injured he was furnished with a Aeronica airplane, powered by a 65-horsepower motor, by appellant for the purpose of a practice flight.

Further, the evidence tended to show that on the afternoon he was injured appellee, after giving the airplane the customary ground check as to condition of wings, gas and oil, oil pressure, revolutions per minute of the motor, controls on the plane, etc., he "took off" from the airport and maneuvered the plane to get out of the pattern, climbed

to about 1500 feet and then flew the plane to a training area, with which appellee was familiar, some 15 or 18 miles from the airport: that he did some "S" turns over a road he knew, and in making these turns, lost some 800 feet in altitude: that he then climbed to an altitude of about 3000 feet, put the plane into a spin, and after three revolutions or turns pulled the plane out of the spin at about 1500 to 1700 feet: that when he started to pull out of the spin the stick "was kind of gritty; a little grab in there," but it came back all right: that he then flew on and lost more altitude: that when he was flying at about 900 feet he went into a left bank and that when he tried to straighten up from this left bank his rudder would stick and the plane would hardly straighten up: that he finally got the wing up a little but he was still going down at an angle: that he tried to pull the stick back—he jiggled it first and then pulled back on it hard but the stick would not come back: that he then tried to push the stick forward and gave the plane more gas, but the plane continued downward at about a forty-five degree angle: that when he found that he could not right the plane he cut the motor off: that the plane continued down at about a forty-five degree angle and struck the ground at about that angle. Appellee was severely injured. The evidence further tends to show that there were three eyewitnesses to the crash who immediately went to the plane and extricated appellee, and that the plane did not catch fire or burn: that employees of appellant arrived at the scene of the accident some two hours after it occurred, and that one of them guarded the plane all night and until it was dismantled the next day. The evidence further tended to show that in dismantling the plane the wings were taken off and the engine was sawed off at about the plane's windshield: that after the engine had been sawed off the front part of the fuselage of the plane was visable and a screwdriver about ten inches long was discovered in the area between the floor board and the bottom and the surface of the plane: that the screwdriver was of the same type and make as used by appellant's mechanics in working on its aircraft.

The evidence is further to the effect that the screwdriver, when found, was not in contact with any part of the controls but was wedged in front of the fire wall between the pilot's seat and engine of the plane, but was under the floor board of the plane and in a compartment, space or area housing a part of the controls. In other words, in a place where it could have come in contact with the controls before it became wedged in the place where it was found.

Here the relationship between the parties was that of bailor and bailee for hire. Where there is a bailment for the mutual benefit of the parties, as for hire, there is imposed on the bailor, in the absence of a special contract or representation, an obligation that the thing or property bailed for use shall be reasonably fit for the purposes or capable of the use known or intended. 6 C.J., § 52, p. 1117; 8 C.J.S., Bailments, § 25, page 258; 3 R.C.L., § 61, p. 138; Mallory S. S. Co. v. Druhan, 17 Ala.App. 365, 84 So. 874. And if the use of the instrumentality threatens serious danger to others unless it is in good condition, there is a duty to take reasonable care to ascertain its condition by inspection. Motor Terminal & Transportation Co. v. Millican, 244 Ala. 39, 12 So.2d 96. The liability is not to be determined by the contract alone, but is rested on the bailor's duty beyond the contract. The duty of diligence of a bailor in such a bailment is an obligation imposed by law on one in his dealings with his fellows to refrain from acts of omission or commission which he may reasonably expect would result in injury to the bailee or others. In such a case the bailee may waive the contract and sue for the breach of duty as was done in the instant case. Knowles v. Dark & Boswell, 211 Ala. 59, 99 So. 312. See Al DeMent Chevrolet Co. v. Wilson, 252 Ala. 662, 42 So.2d 585; Motor Terminal & Transportation Co. v. Millican, supra. See also Fidelity & Casualty Co. v. J. D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669.

■ It is likewise well established that the cause of an injury and the question of actionable negligence may both be established by circumstantial evidence, provided the circumstances relied upon are not themselves presumed. Harbin v. Moore, 234 Ala. 266, 175 So. 264.

Appellant's theory as to what caused the aircraft to fall or crash is that appellee negligently allowed it to develop a low speed stall. There is evidence to support such a theory, but it only creates a conflict with that of appellee to the effect that appellant negligently furnished to him an aircraft not reasonably fit for the purposes, or capable of the use known or intended.

■ Appellant argues that there is no evidence that the aircraft was not inspected periodically, and further, that there is no evidence that an inspection would have disclosed the presence of the screwdriver beneath the floor board of the aircraft. But, be that as it may, there is evidence from which the jury could infer that the mechanics or employees of appellant left a screwdriver beneath the floor board of the aircraft and that it jammed the controls of the aircraft to such an extent as to cause it to fall. Regardless of whether or not appellant inspected the aircraft, it was appellant's duty to exercise due care to furnish appellee with a plane reasonably fit for the purposes, or capable of the use known or intended. The furnishing of a plane with a screwdriver under the floor board where it may come in contact, and interfere with, the controls of the plane may, on that theory, be a breach of that duty. State for use of Piper v. Henson Flying Service, 191 Md. 240, 60 A.2d 675, 4 A.L.R.2d 1300. We are clear to the conclusion that the evidence was sufficient to take the case to the jury, and as a consequence, the refusal of the charge under discussion, affirmative in nature, was without error.

■ Assignments of error 9 to 15, inclusive, are based on the trial court's refusal of appellant's motion for a new trial. They are argued together in brief and if one of the assignments is without merit the others need not be examined. Assignment of error numbered 9 is as follows: "For that the trial court erred in overruling the appellant's motion for a new trial for that the verdict of the jury is contrary to the evidence."

We are unwilling to say that the verdict of the jury is contrary to the evidence.

Appellant's assignment of error numbered 4 reads as follows: "The trial court erred in sustaining objection of counsel for the plaintiff to the introduction in evidence of a photostatic copy of a statement bearing the admitted signature of the plaintiff."

■ . As was said in Hosey v. Southport Petroleum Co. of Delaware, 244 Ala. 45, 12 So.2d 93, 95: "Photostatic copies, very useful in many respects, are secondary evidence. 32 C.J.S., Evidence, § 815, page 747."

■ No satisfactory predicate was laid, in the instant case, for the introduction of secondary evidence and the trial court did not err in sustaining appellee's objections to the photostatic copy of the statement.

For like reasons appellant can take nothing by assignments numbered 5 and 6.

Assignments of error 7 and 8 are as follows:

"7th. For that the trial court erred in overruling objection of counsel for the defendant to the following question propounded to the witness White: 'Q. Mr. White, if there had been a screwdriver under the floor board of that airplane, and in connection with doing the spin late that afternoon, and that screwdriver had become caught or wedged in the stick of the airplane, would that affect the operation after it had hung in there?'"

"8th. For that the trial court erred in overruling the objection of counsel for the defendant to the following question propounded to the witness White: 'Q. As a matter of fact, Mr. White, if it was hung anywhere in there so that a pilot was unable to pull that stick back, it would make him go down, wouldn't it?'"

■ The questions to which appellant's objections were overruled, were propounded to appellant's witness while on cross-examination. On direct examination Mr.

White testified that he was a student in the school operated by appellant: that he was taking a commercial pilot's course at the school: that at the time appellee was injured, he, White, had had some 70 hours flying time as a "solo pilot—private pilot." That he was familiar with aircraft of the type appellee was flying when he was injured, in fact, had flown the particular aircraft that appellee was flying when injured, and had flown it on the morning of the day appellee was injured. In effect, White's testimony, on direct examination, qualified him as an expert on the type of aircraft involved in the cause, and as to the particular aircraft.

As we have said there was evidence from which the jury could infer that the screwdriver became entangled or caught in the controls of the aircraft. It was entirely proper to ask an expert the effect such entanglement would have on the operation of the aircraft.

We find no error to reverse, and accordingly the cause is affirmed.

Affirmed.

FOSTER, LAWSON and STAKELY, JJ., concur.