Frank D. CORREA, Sr., Appellant,

v.

Loren E. STEPHENS, d/b/a Superior Builders, Appellee.

No. 730.

Supreme Court of Alaska.

June 28, 1967.

12. See AS 12.70.020(b) quoted in note 1 supra.

Frank M. Doogan, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellant.

Robert J. Annis, of Robertson, Monagle, Eastaugh & Annis, Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

Appellee was under contract with the State of Alaska to repair portions of the governor's mansion in Juneau and had engaged appellant as a subcontractor to re-roof the carport. While working on the carport appellant was injured while using a ladder belonging to appellee. Appellant sued appellee for negligence and for breach of an implied warranty of fitness.

At the conclusion of the presentation of appellant's evidence the trial court granted appellee's motion for involuntary dismissal based upon that portion of Civil Rule 41(b) which provides for such a motion at that point in the trial "on the ground that upon the facts and the law the plaintiff has shown no right to relief."[1]

Appellant's testimony was that he and his employee arrived at the governor's mansion in his truck and commenced to unload roofing equipment. At this point appellee is reported to have told appellant not to use appellant's ladder, but to use the appellee's ladder which was nearby. Appellant says he advised appellee that he had to unload his ladder anyway, but that appellee nevertheless got his ladder, which was leaning against the wall, and put it in position to use. Appellant went on to testify that appellee's ladder was an aluminum extension ladder which consisted of two sections, each of which was approximately fourteen feet in length. When extended, the two sections were held together by clips or hooks. The ladder had moveable angle shoes on the bottom which were intended to prevent sliding. The appellant stated that he and his employee and appellee climbed the ladder to the roof of the carport. Appellant and his employee commenced chopping away the surface of the roof while appellee was engaged in removing a section of the carport railing to use as a pattern for building a replacement. In order to remove a section of the railing appellee was required to change the position of the ladder three or four times. After about one hour and a half appellee descended by the ladder to return to his shop with the pattern. About one hour later appellant attempted to descend by the ladder. His testimony, in broken English, was that he stood on the deck, turned around and put his right foot on the first step and that as soon as he put his weight on the ladder "it slide from the hooks and also the footing went out." Appellant said he knew that the hooks let go

Because with the piece of lead that was sticking out from the first section, she come down too and then when she come

1. Civ.R. 41(b) states in part:

After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

down that's when I hit my—I was stepping on one of those steps and when that piece come down and I hit the other piece of ladder then that flipped my feet backwards and I went backwards.

Appellant also said he knew the hooks came loose because he heard a noise "Like, click, click, click, click," as he was falling down. Appellant's employee, Lewis Carlick, testified that he only saw a portion of appellant's body as he started down and heard a clicking noise when he fell. He also testified that he assisted appellee and another person finish the carport roof during the afternoon and that appellee's ladder was again used to gain access to the carport roof.

In granting the motion for involuntary dismissal the trial judge stated:

I have given this matter considerable thought in the light of both the Rogge case [Rogge v. Weaver, 368 P.2d 810 (Alaska 1962)] and the Pope case [Pope v. Anderson, 370 P.2d 185 (Alaska 1962)]. * * * Considering the evidence as I must, from the light which is most favorable to the [appellant], I cannot find that a prima facie case has been made by the [appellant] in this case. The Court is left entirely in the position of guesswork, of speculation as to what has happened in regard to the accident. There is no question that the [appellant] * * * fell but to say there is a lack of care * * * on the part of the [appellee] which has caused this is not shown in the evidence at this point. I cannot find that a prima facie case of negligence has been made out, there is nothing to show a breach of duty, for example, [appellant's] counsel discusses the * * * disparity of weights of the individuals, if any there be and no such question was asked of the [appellant] and there is no such evidence before the Court as to a disparity of weight. There is no such evidence before the Court that

if such a disparity exists what effect it might or might not have on this type of a ladder. It is true that the ladder was later used and it had been used for three men to ascend to the roof, for one to come down, in every possible effort, which I have genuinely made to find a prima facie case at this point for the [appellant], I'm unable to do so. The proof fails at that point. The motion will be granted for the dismissal of Count 1 and Count 2.

■ We are of the opinion that the trial judge was correct in granting the motion to dismiss.

Even after considering appellant's evidence in its most favorable light we are of the opinion that he failed to establish a prima facie case of negligence. No duty of care was established. Appellant was an independent contractor. By the terms of his contract with appellee, appellant was to furnish his own equipment. He in fact brought his own ladder to the job site, removed it from his truck and placed it against the fence. There is nothing in the record to indicate that appellee's offer of the use of his ladder was anything other than a gratuitous act. It cannot be logically inferred that appellee was to receive any benefit from appellant's use of his ladder. On the contrary, the most logical inference from the circumstances as related by appellant would seem to be that it made no difference to appellee whether or not appellant accepted his offer. Appellee's ladder was apparently already leaning against the building. Appellant's own ladder was lying within a few feet of the carport and could have been raised in a matter of seconds if he had preferred to use it instead of appellee's

■ Appellant relies upon section 392 of the Restatement (Second) of Torts (1965) to establish a duty of care by appellee.[2] We do not believe, however, that

2. Section 392 states that:
   One who supplies to another, directly or through a third person, a chattel to

be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to

the evidence permits an inference that appellee was supplying the ladder for his own "business purposes." More in point with respect to the evidence presented in this case is the wording contained in comment (e) of section 392 of the Restatement. Comment (e) states that:

One who employs another to erect a structure or to do other work, and agrees for that purpose to supply the necessary tools and temporary structures, supplies them to the employees of such other for a business purpose. This is true irrespective of whether the structure or work when finished is to be used for business or residential and social purposes. *On the other hand, if it is understood that the person who is to do the work is to supply his own instrumentalities, but the person for whom the work is to be done permits his own tools or appliances to be used as a favor to the person doing the work, the tools and appliances are supplied as a gratuity and not for use for the supplier's business purposes.* (Emphasis added.)

■ We agree with the trial judge that even if there had been a duty of care, no evidence was produced which could logically support an inference of negligence. Three people ascended the ladder and appellee had descended it without incident. An hour or so after appellee had safely descended the ladder it allegedly collapsed with appellant. Appellant argues that it can be inferred that appellee was negligent in some manner as he descended the ladder and that this unspecified negligence must have been the cause of the extension hooks becoming disengaged, permitting the ladder to collapse when appellant attempted to descend. To consider the evidence in the manner suggested would be speculation. The most logical inference from the evidence would seem to be that since the ladder had been safely used repeatedly during the preceding two hours, that it had not been negligently handled, and that appellant's accident resulted from some inadvertence or carelessness of his own. Appellant has cited our decision in Rogge v. Weaver [3] as authority for the proposition that a trial judge should not grant involuntary dismissal at the conclusion of plaintiff's case if plaintiff has presented a prima facie case based on unimpeached evidence which is not inherently improbable, but should follow the alternative offered by Civil Rule 41(b) and decline to render a judgment until the close of all the evidence. However, in *Rogge,* this court also said that "[w]here plaintiff's proof has failed in some aspect the motion should, of course, be granted" [4] and we believe the trial judge correctly applied this aspect of *Rogge* in the case before us.

■ In view of the fact that under the terms of his contract with appellee appellant was to furnish his own equipment,[5] and in view of our conclusion that the most logical inference to be drawn from the conduct of the parties with respect to

those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

3. 368 P.2d 810 (Alaska 1962).

4. Id. at 813.

5. Appellant's testimony describing the making and terms of the contract was as follows:

[Appellee] was a general contractor on the Governor's mansion to put the roofs on and he saw me on the City Cafe and he wanted me to go and put the hot roof [on] the carport, * * * and I told, yes I had time and then he asked me how much it was going to cost. I told, well I charge you seven and one half [dollars] an hour for whatever time it take us *and use of my equipment, my hot pot and the truck and mops and everything.* (Emphasis added.)

the use of appellee's ladder is that it was a gratuitous favor, it follows that there is no basis for application of the doctrine of implied warranty of fitness. Nor was any evidence presented which would support a logical inference that appellee had violated a duty of care toward appellant.

We cannot accept appellant's alternative contention that he was clothed with the status of a business visitor or invitee with respect to appellee. Appellee was not the owner of the premises and exercised no control whatsoever over them.[6]

The judgment below is affirmed.

RABINOWITZ, Justice (dissenting).

I dissent from the majority's conclusion that the superior court's grant of appellee's Civil Rule 41(b) motion should be affirmed. In my view appellant had established a prima facie case, and therefore I would reverse the judgment of involuntary dismissal which was entered below.

The majority has decided (considering appellant's evidence in its most favorable light) that appellant failed to establish that appellee owed any duty of care, and that appellant's proof was further deficient in that no negligence on appellee's part was shown.

As to the duty of care issue, I am of the opinion that section 392 of the Restatement (Second) of Torts (1965) is apposite. Under the standard of care articulated in section 392, appellee had the duty of exercising reasonable care to make the ladder, which he furnished, safe for appellant's use. This standard of care also compelled appellee to subject the ladder to such an inspection as the danger of using it in a defective condition reasonably required. Section 392 of the Restatement reads as follows:

One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.[1]

6. Section 332 of the Restatement (Second) Torts states that:
   (1) An invitee is either a public invitee or a business visitor.
   (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
   (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

1. Comment a to this section of the Restatement reads:
   The rules stated in §§ 388–390 determine the liability of those who for any purposes supply a chattel for the use of others. They, therefore, apply to determine the liability of a person who supplies a chattel for a use by others in which he or the others have a business interest, with knowledge that it is or likely to be dangerous for its intended use. (See § 391.) This Section states the rule under which a peculiar liability is imposed upon one supplying chattels for another's use because of the fact that the use is one in which the supplier has a business interest. A person so supplying goods is required not only to give warning of dangers which he knows are involved in the use of the article, or which, from facts within his knowledge, he knows are likely to be so involved, but also to subject the article to such an inspection as the danger of using it in a defective condition makes it reasonable to require of him. The additional duty of inspection thrown upon the person so supplying chattels for a use in which he has a business interest, as compared with the absence of any such duty when he has no business interest in the use

Comment *e* of this section of the Restatement is of significance here. This comment reads in part as follows:

One who employs another to erect a structure or to do other work, and agrees for that purpose to supply the necessary tools and temporary structures, supplies them to the employees of such other for a business purpose.[2]

In my opinion the record discloses that appellant's case in chief comes within the purview of section 392 of the Restatement. Although it was initially agreed that appellant was to supply his own equipment when he arrived at the jobsite, appellee, without request, volunteered and insisted that appellant use appellee's ladder.[3] Under these facts the trier of fact could reasonably infer that appellee had agreed to supply the ladder to appellant, and that it was thereafter used in furtherance of appellee's business purposes. I cannot agree that the "most (or more) logical inference" which can be deduced from appellant's evidence is that the furnishing of the ladder was a gratuitous act.

I believe the case at bar to be distinguishable from the factual situation alluded to in comment *e* to section 392 of the Restatement where it is stated in part:

On the other hand, if it is understood that the person who is to do the work is to supply his own instrumentalities, but the person for whom the work is to be done permits his own tools or appliances to be used as a favor to the person doing the work, the tools and appliances are supplied as a gratuity and not for use for the supplier's business purposes.

Here the record is devoid of any request from appellant to appellee for the use of his ladder. What the record does disclose is that appellee (the general contractor) insisted that appellant not use his own ladder. Appellant's proof further demonstrates that the ladder was used in furtherance of appellee's business purposes, namely, in the furtherance of appellee's general contract to repair certain portions of the goveronor's mansion.[4] I, therefore, conclude that section 392 of the Restatement is applicable here.[5]

---

for which the chattel is supplied, is analogous to the duty of inspection imposed upon one who permits another to come upon his land for his business purpose.

2. See illustration number 1 to this comment which reads:

A employs B, a painter, to repaint his residence. The contract provides that B be allowed to use the ladders which A has upon his premises. C, an employee of B, while using one of these ladders, is hurt by a defect which, although not readily observable, could have been discovered by the exercise of a reasonably careful inspection. A is subject to liability to C.

3. In addition to the relevant portions of the record referred to in the majority's opinion, appellant testified that appellee told him, "I got my ladder here, don't use yours. Use mine, mine is handy here. * * * "

4. Contrary to the majority's reasoning that the most logical inference is that it made no difference to appellee "whether or not appellant accepted his offer," the

trier of fact could reasonably have inferred that appellee agreed and insisted his ladder be used in order to avoid the necessity of moving two ladders while engaged in removing a section of the railing for use as a pattern.

5. In Jenkins v. Banks, 147 Me. 438, 87 A. 2d 908, 910 (1952), the court said in part:

Where the contractee undertakes to provide any of the instrumentalities with which the work is to be carried on, he owes to the contractor and the latter's employees the duty of exercising reasonable care with respect thereto. * * *

* * * * *

If the relationship is that of contractee and independent contractor, and if as a part of the contract the contractee undertakes to furnish the contractor with appliances with which to do the work he, because of the contract, and as an implied obligation imposed thereby, owes the contractor the duty to furnish reasonably safe appliances and to use reasonable care to inspect such

Additionally, I am of the opinion that appellant's evidence established that appellee owed him a duty of care under the rationale of Hilleary v. Bromley.[6] In that case the defendant had agreed to place siding on a house and subcontracted the job of applying the siding to plaintiff. As part of the subcontract, defendant agreed to furnish the necessary ladders. In its opinion the court stated:

> It is axiomatic that tort liability is predicated upon the violation of a duty growing out of a legal relationship voluntarily assumed by the tort-feasor with another, or a duty arising by operation of law because of the situation of the parties. The defendants were the bailors and the plaintiff the bailee of the ladder in question. The legal rights and duties arising out of bailment are founded upon the contemplation of benefit accruing to one party or the other, or to both. Here, the defendants, as bailors, furnished the ladder to assist the bailee, the plaintiff, in performing a contract in which the bailors were interested. It was a bailment for mutual benefit. The extent of the duty of a bailor as to defects in the property, which he should recognize as likely to injure others, has its basis in the derivation of benefit to himself. Where the bailor has no beneficial interest in the bailment, it may be unreasonable to impose upon him a duty to put the subject matter of the bailment in usable condition unless it is an inherently dangerous instrumentality. Such an obligation would unduly restrict the transfer of property, causing persons to refrain from lending chattels to another for the sole benefit of the latter. However, where both the bailor and the bailee are benefited by the transaction, the situation is otherwise. It then becomes the bailor's duty to make the chattel, which is the subject of bailment, safe for its intended purpose, or to inform the bailee of any unsafe condition in the chattel which it was the duty of the bailor, in the exercise of ordinary, care, to discover. * * *

> Where a bailor is benefited by the bailment, as in this case, it is held that his duty should be of a higher nature than in the case of a bailment which benefits solely the bailee. * * * Such bailor is under obligation to use reasonable effort to anticipate danger by discovering defects which may exist in the chattel bailed. * * *[7]

I am of the opinion that the trier of fact, from the record in this case, could draw the reasonable inference that appellee, as bailor, supplied the ladder in order to assist appellant, the bailee, in the performance of both the subcontract and general contract. Both parties were interested in the completion of these contracts. Ap-

---

appliances prior to furnishing them to the contractor in order to discover and remedy defects.

See the following authorities which, in construing section 392 of the Restatement, have reached similar conclusions: Dowell, Inc. v. Lyons, 238 F.2d 633, 636 (6th Cir. 1956); Petty v. Cranston Print Works Co., 243 N.C. 292, 90 S.E.2d 717, 724 (1956); Meny v. Carlson, 6 N.J. 82, 77 A.2d 245, 253, 22 A.L.R.2d 1160 (1950); Hilleary v. Bromley, 146 Ohio St. 212, 64 N.E.2d 832, 835–36 (1946).

6. 146 Ohio St. 212, 64 N.E.2d 832, 834–35 (1946).

7. The court in Hilleary v. Bromley also said:
> It is true that the plaintiff in this case was an independent contractor and not an employee of the defendants. The general rule is that a contractor cannot recover damages from his employer for injuries which the former may sustain in the performance of his contract, and this rule is predicated upon the fact that the contractor has control and is required, as every principal is, to provide for his own safety and protection. If the employer, however, retains the right of control or agrees to furnish the instrumentalities of the work to the contractor to be used by him in the prosecution of the work and the latter is injured by reason of their being defective, a different rule obtains.
Id. at 835.

pellant's proof established that the furnishing of the ladder was a bailment for mutual benefit. In such circumstances it was the duty of appellee to make the ladder safe for its intended purpose "or to inform the bailee of any unsafe condition in the chattel which it was the duty of the bailor, in the exercise of ordinary care, to discover."[8]

As to the proof of negligence issue (i. e., appellee's breach of a duty owed to appellant), I am of the opinion that appellant's proof established a prima facie case. In Rogge v. Weaver[9] this court had occasion to construe Civil Rule 41(b) and in so doing stated in part:

> We endorse generally the rule that a trial court should not reject uncontradicted and unimpeached testimony unless the testimony was inherently improbable. Nor should the testimony of a party to the case, or an employee of a party, be disregarded, discounted or considered inherently improbable or suspicious in the absence of conflicting proof, or of circumstances justifying doubt as to the truth.

I note that the record is devoid of any indication that the trial court considered the testimony of plaintiff or of his witness "inherently improbable or biased."[10] In my view appellant's proof made out a prima facie case that appellee furnished him with an unsafe ladder (whether the standard of care is one arising out of the duties owed by suppliers of chattels in a business context or that which arises from a mutually beneficial bailment).

For the majority to conclude that "no evidence was produced which could logically support an inference of negligence" is to ignore appellant's uncontradicted evidence that the ladder collapsed. Also ignored is appellant's testimony to the effect that when he put his weight on the extension portion of the ladder, it gave way and that this was caused by the two hooks coming loose.[11]

The majority's conclusion that the "most logical inference" is that appellant himself was inadvertent or careless represents a departure from the principles articulated in *Rogge* and embodies extensive speculation.

For the foregoing reasons I would reverse and remand for a new trial.

8. Hilleary v. Bromley, 146 Ohio St. 212, 64 N.E.2d 832, 835 (1946). See Aircraft Sales & Serv. Inc. v. Gantt, 255 Ala. 508, 52 So.2d 388, 391 (1951).

9. 368 P.2d 810, 815 (Alaska 1962) (footnotes omitted).

10. Id. at 814.

11. Both appellant and Lewis Carlick testified they heard the clicking sound made by the disengaged hooks at the time in question.