David GLOVER and Dale Fett, Appellants,

v.

Hubert SAGER & Hubert Sager, Jr., d/b/a Sager Trucking, Appellees.

No. 6659.

Supreme Court of Alaska.

July 22, 1983.

Dale J. Walther, Clark, Walther, & Flanigan, Anchorage, for appellants.

John R. Strachan, Strachan, Kelly & Patterson, Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This is an appeal from an involuntary dismissal of a suit on an employment contract. Glover and Fett contend that the superior court committed error in dismissing their complaint with prejudice pursuant to Civil Rule 41(b).[1] Furthermore, they allege that the superior court erred in imposing insufficient sanctions against Sager Trucking (Sager) for its willful failure to make discovery.

At the time in question, Sager was hauling fuel oil for the Alyeska Pipeline Service Company. Glover and Fett were employed as truck drivers by Sager. In late 1979, Glover and Fett formulated plans to become independent truck owners under a proposed agreement by which they would continue driving for Sager. Glover and Fett claim that they were given assurances of long-term employment and a sufficient

---

**1.** Alaska R.Civ.P. 41(b) provides in relevant part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

amount of work to enable them to make payments on the trucks they had purchased in contemplation of their transition from company drivers to owner/operators. They allege that they were provided a guarantee from Sager that their compensation would cover existing expenses and any increases therein and that any tariff increases granted Sager would be passed on to them. Finally, Glover and Fett claim they were assured by Sager that it would continue to follow a system of dispatching drivers by seniority. Glover and Fett's position is that they reached an understanding with Sager that these concerns would be satisfied upon their making the transition from employee/drivers to owner/operators.

By December 1979, Glover and Fett had purchased trucks and commenced operating under the new relationship with Sager. In addition, they signed agreements by which Sager leased the trucks.[2] Subsequently, Sager informed Glover and Fett that tariff increases granted to it would not be passed on to them. Negotiations between the parties followed this announcement. Sager also informed Glover and Fett that it was not earning an adequate profit. On the basis of this representation, Glover and Fett agreed to a modification of the seniority dispatch system. This change apparently resulted in a larger percentage of driver dispatches going to Sager's regularly employed drivers.

After negotiations between the parties collapsed, Sager terminated the lease agreements it had with Glover and Fett by giving them the thirty-days' notice required under the lease.[3] Thereafter, Glover and Fett filed suit for breach of contract. They also asserted claims of intentional and negligent misrepresentation based on representations Sager had made during negotiations regarding its financial condition.[4]

The case was tried to the court without a jury.[5] At the conclusion of Glover and Fett's case in chief, the superior court dismissed their claims under Civil Rule 41(b). In conjunction with its order of dismissal, the superior court entered findings of fact and conclusions of law. Of significance to the resolution of this appeal are the following findings of fact and conclusions of the superior court:

> David Glover ... and Dale Fett were owner-operators of trucks used for moving Sager trailers containing fuel oil for Alyeska Pipeline. Plaintiffs were employed by Sager Trucking personally, and leased their trucks to the company under a separate agreement.
>
> ... The plaintiffs were hired as "owner/operators"—that is, they were not strictly employees of Sager Trucking, but owned their own trucks and operated them under a standard United Owner/Operators of Alaska Equipment Lease. Gilbertson variously told each of the plaintiffs that the company would maintain a seniority system for them and that the company had an expectation of a long period, perhaps fifteen to twenty-five vehicles, defendant would give plaintiffs permanent employment as owner-operators to haul freight under existing contracts defendant has with Alyeska Pipeline Service Company and others.
>
> . . . .
>
> David Glover in his discussion with defendants' authorized agents was urged to also obtain separate maintenance facilities to maintain the trucks that were to be acquired under defendants' promises to plaintiffs.

---

**2.** Each lease contained the following provision: [T]his lease shall be considered to be a month-to-month lease, renewable automatically without notice each month after the initial term unless either party shall have given the other written notice of termination thirty (30) days prior to date of termination.

**3.** *See supra* note 2.

**4.** In their complaint, Glover and Fett alleged in part that:

> On or about April and May of 1979, defendants, by and through its authorized General Manager, Joe Gilbertson, urged plaintiffs to purchase large diesel trucks. Joe Gilbertson promised that if plaintiffs purchased these

**5.** The issue of liability was tried first. Since the superior court granted Sager's motion for involuntary dismissal, the issue of damages was not reached.

years, for retaining the Alyeska Haul.[6]

Gilbertson told Glover that he would "try" to keep Glover's income to around sixty percent (60%) of the tariff and that as long as Sager Trucking had the Alyeska haul, Glover would have work with Sager; that Glover would run his truck under a seniority system and that tariff increases would be passed on to the drivers. Glover subsequently agreed that the Alyeska and military hauls could be assigned on a modified seniority system and that a rotating system or haul assignments could be instituted.

. . . .

Gilbertson told Fett that as long as he kept his nose clean and did a good job Sager Trucking would keep him on as long as Sager had the Alyeska Haul on a seniority basis and the he would "try" to keep Fett's income to around sixty percent (60%) of the trucking tariff. Sager told Fett that he would make sure Fett got enough work to pay his truck off. Fett agreed, as did the other drivers after they went to work, to a modification of the seniority system of trucking assignments.

In its conclusions of law the superior court ruled that:

1. An employment contract existed between each of the plaintiffs and Sager Trucking.

2. The employment contract was not breached by Sager Trucking. Sager Trucking did not commit fraud, intentional misrepresentation or negligent misrepresentation with regard to any of the plaintiffs.

3. Plaintiffs therefore are not entitled to any relief requested by their complaint.

4. The defendants are entitled to a judgment of dismissal with prejudice and to recover their costs and attorney's fees.[7]

In their appeal, Glover and Fett advance four specifications of error. They claim that the superior court erred in concluding that Sager was not bound by representations made to and relied upon by Glover and Fett; that the superior court erred in concluding that Glover and Fett had agreed to a modification of the seniority dispatch system of drivers; that the superior court erred in not finding Sager's anticipatory repudiation to be a breach of Glover and Fett's employment contracts with Sager; and that the trial court abused its discretion in failing to impose sufficient sanctions against Sager for its failure to make relevant documents available for discovery.

■ Resolution of the merits of this appeal depends in part upon application of Civil Rule 41(b). *See supra* note 1. In considering Rule 41(b) motions, the trial court is required to view the plaintiff's evi-

---

**6.** The superior court also found that most of the discussions as to the terms of Glover and Fett's employment were conducted between Glover and Fett and Joe Gilbertson, General Manager of Sager. Some additional discussions took place with Corky Sager.

**7.** These conclusions of law followed from the superior court's findings that:

Each of the plaintiffs had his own understanding of his employment relationship with Sager Trucking. However, the evidence presented at trial conclusively established that no more existed between each plaintiff and Sager Trucking than an employment relationship which was terminable at the wish of either party and which contained no mutually-agreed terms of employment as claimed by any of the plaintiffs. Although each plaintiff has claimed defendant bound itself to pass on specified percentages of tariff increases, and to maintain his employment for

a period of ten to fifteen years, or as long as Sager Trucking had the Alyeska run, the evidence does not establish such agreements.

The terms by which Sager Trucking employed each of the plaintiffs were supplemented by a standard owner/operator's lease document. This document established the terms by which the trucks of the . . . plaintiffs would be used by the company. The lease itself was not the entire employment arrangement between the plaintiffs and Sager Trucking, but it did govern the method by which the trucks would be used by the company and its terms were not breached by Sager Trucking with regard to any of the plaintiffs.

Neither Gilbertson, Corky Sager, or any other of the Sager Trucking management intentionally or negligently misrepresented to any of the plaintiffs the terms upon which they would be employed.

dence in its most favorable light.[8] In *Rogge v. Weaver,* 368 P.2d 810, 813 (Alaska 1962), we stated that

> where plaintiff has presented a prima facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof.[9]

We are of the opinion that application of the foregoing principles leads to the conclusion that the superior court erred in granting Sager's Civil Rule 41(b) motion and that the decision should be reversed. Glover and Fett established a prima facie case of breach of contract which precluded the superior court from granting a Civil Rule 41(b) involuntary dismissal.

■ We think the superior court's findings of fact themselves mandate reversal. In our view, the evidence summarized in the court's findings demonstrates that Glover and Fett established a prima facie case against Sager under several theories. First, we think that Glover and Fett have made out a prima facie case of promissory estoppel under the Restatement (Second) of Contracts § 90 (1981). This section reads as follows, in relevant part:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

In *Slaymaker v. Peterkin,* 518 P.2d 763, 766 (Alaska 1974), this court adopted the first Restatement's formulation of the promissory estoppel doctrine.[10] Subsequently, in *State v. First National Bank of Ketchikan,*

629 P.2d 78, 81 (Alaska 1981), we noted that:

> Corbin identifies four elements necessary to a successful section 90 action: a) that the action induced "must amount to a substantial change of position," 2) that the action induced must have been either actually foreseen or reasonably foreseeable by the promisor, 3) that "an actual promise must have been made" and "must itself have induced the action or forbearance in reliance on it," and 4) that enforcement must be necessary in the interest of justice. 1A A. Corbin, *Corbin on Contracts,* § 200, at 215–21 (1963).

Viewing the evidence in the light most favorable to the non-moving party, we hold that Glover and Fett established a prima facie case of promissory estoppel. Inherent in this holding is our conclusion that the actual terms of Glover and Fett's employment relationship with Sager are reasonably definite and certain and thus enforceable. We further conclude that a prima facie case of breach on Sager's part has been established by virtue of the thirty-day notices of termination which were given under the lease by Sager. Thus, the superior court erred in dismissing Glover and Fett's complaint insofar as their proof made out a prima facie case of promissory estoppel.

■ Secondly, we hold that analysis of Glover and Fett's proof under ordinary contract principles leads to the conclusion that they established a prima facie case of contract formation and subsequent breach by Sager. In *Stenehjem v. Kyn Jin Cho,* 631 P.2d 482, 484–85 (Alaska 1981), we stated in part that:

> We have recognized that "the primary underlying purpose of the law of contracts is the attempted 'realization of reasonable expectations that have been in-

---

8. *Correa v. Stephens,* 429 P.2d 254, 256 (Alaska 1967).

9. In *Trusty v. Jones,* 369 P.2d 420, 422 (Alaska 1962) we described two policy reasons which support the *Rogge* prima facie rule:

> We believe the Rogge rule is more likely to achieve justice and reduce the number of appeals resulting from the application of

Rule 41(b) than an interpretation permitting the judge to dismiss in close cases before he had heard both sides of the issues and has obtained a complete picture of the controversy.

10. *See also Dresser Industries v. Foss Launch and Tug Co.,* 560 P.2d 393, 396 (Alaska 1977).

duced by the making of a promise.'" *Rego v. Decker,* 482 P.2d 834, 837 (Alaska 1971), *quoting* 1 A. Corbin, Contracts § 1, at 2 (1963) (footnote omitted). This realization can take place only when the contract to be enforced is "reasonably definite and certain as to its terms." *Alaska Creamery Products, Inc. v. Wells,* 373 P.2d 505, 510 (Alaska 1962).[11]

(Footnote omitted.)

The evidence also shows a prima facie case of breaches of contracts on Sager's part as a consequence of its sending the thirty-day termination notices and by its announcement that tariff increases granted Sager would not be passed on to either Glover or Fett.[12] Thus, we hold that the superior court's dismissal order should be set aside and the matter remanded for completion of the trial.[13]

■ We will briefly address one other specification of error raised in this appeal. Glover and Fett contend that the superior court abused its discretion in failing to award sufficient sanctions against Sager for its willful obstruction of discovery. Glover and Fett argue in part that "[t]his Court may conclude that the only sanction which would have protected Plaintiffs from prejudice would have been an order establishing liability against defendants and precluding defenses or at a minimum, striking witness Hubert Sager, Jr., from defendants' witness list." Civil Rule 37(b)[14] provides

11. In *Stenehjem v. Kyn Jin Cho,* 631 P.2d 482, 485 (Alaska 1981), we observed:

> A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.
>
> 1 A. Corbin, *supra,* § 95, at 394 (footnote omitted).
>
> However, these statements are tempered by language in the same section encouraging courts to give legal effect to the intentions of the parties where necessary to reach a fair and just result. *Id.* at 400. Similarly, Restatement (Second) of Contracts § 32(2) (Tent.Drafts 1–7, 1973) provides, "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." We have adopted this method of analysis in the past, and a review of the factual situations presented to the court is important to an understanding of the principles involved.

12. Again we note that the superior court found that the leases did not embody all the terms of the employment relationships between the parties.

13. Given this holding, we deem it unnecessary to address the merits of each of the specifications of error which have been advanced in this appeal.

14. Alaska R.Civ.P. 37(b) provides:

> (b) *Failure to Comply with Order.*
> (1) *Sanctions by Court in Judicial District Where Deposition is Taken.* If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the judicial district in which the deposition is being taken, the failure may be considered a contempt of that court.
> (2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
> (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to physical or mental examination;

the trial court with a wide variety of sanctions which, in its discretion, it can impose in the event a party fails to comply with discovery orders. Our review of the record here fails to persuade us that the superior court abused its discretion by failing to impose harsher sanctions.[15]

REVERSED and REMANDED for further proceedings consistent with this opinion.

CONNOR, J., not participating.

(E) Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses including the attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

15. *See generally, Hawes Firearms Co. v. Edwards,* 634 P.2d 377 (Alaska 1981); *Ketchikan Cold Storage Co. v. State,* 491 P.2d 143 (Alaska 1971); *Hart v. Wolff,* 489 P.2d 114 (Alaska 1971); *Oaks v. Rojcewicz,* 409 P.2d 839 (Alaska 1966).